## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XCOAL ENERGY & RESOURCES,<br><br>Plaintiff,<br><br>v.<br><br>BLUESTONE ENERGY SALES CORPORATION, SOUTHERN COAL CORPORATION, AND JAMES C. JUSTICE, II,<br>Defendants. | C.A. No. 18-cv-819-LPS<br><br>**PUBLIC VERSION** |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

OF COUNSEL:

Mark Robeck *(pro hac vice pending)*
Mindy Pava *(pro hac vice pending)*
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC 20007
Tel: (202) 342-8415

Dated: June 25, 2018
5851788 / 45201

Public Version Dated: June 27, 2018

John A. Sensing (#5232)
Jennifer Penberthy Buckley (#6264)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
jsensing@potteranderson.com
jbuckley@potteranderson.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| XCOAL ENERGY & RESOURCES,<br><br>Plaintiff,<br><br>v.<br><br>BLUESTONE ENERGY SALES CORPORATION, SOUTHERN COAL CORPORATION, AND JAMES C. JUSTICE, II,<br>Defendants. | C.A. No. 18-cv-819-LPS<br><br>**PUBLIC VERSION** |

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants Bluestone Energy Sales Corporation ("Bluestone"), Southern Coal Corporation ("Southern Coal") and James C. Justice, II ("Justice") (collectively referred to as "Defendants" or "Bluestone Defendants") hereby answer the Complaint of Plaintiff Xcoal Energy & Resources ("Plaintiff") as follows:

The initial unnumbered paragraph of the Complaint contains an introductory statement to which no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of those allegations and on that basis deny those allegations in full.

## INTRODUCTION

1.      Denies the allegations contained in Paragraph 1 of the Complaint, except admits that Plaintiff and Bluestone are parties to a Coal Supply Agreement ("CSA") entered into as of October 19, 2017, and refers the Court to that document for a complete and accurate description of its contents.

2.      Denies the allegations contained in Paragraph 2 of the Complaint, except admits that Plaintiff and certain of the Bluestone Defendants (specifically, Southern Coal and Justice)

entered into a Performance Guarantee Agreement ("Guarantee"), and refers the Court to that document for a complete and accurate description of its contents.

3.     Denies the allegations contained in Paragraph 3 of the Complaint.

## PARTIES

4.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint, and on that basis denies those allegations in full.

5.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, and on that basis denies those allegations in full.

6.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint, and on that basis denies those allegations in full.

7.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, and on that basis denies those allegations in full.

8.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, and on that basis denies those allegations in full.

9.     Admits the allegations contained in Paragraph 9 of the Complaint.

10.     Admits the allegations contained in Paragraph 10 of the Complaint.

11.     Admits the allegations contained in Paragraph 11 of the Complaint.

## JURISDICTION

12.    Paragraph 12 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, Defendants do not dispute the jurisdiction of this Court.

13.    Paragraph 12 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, Defendants admit that certain Defendants are incorporated in Delaware, and do not dispute venue in this District.  Defendants further refer the Court to the CSA and/or Guarantee for a complete and accurate description of their contents.

14.    States that the Guarantee speaks for itself and is the best evidence of its contents, and refers the Court to the Guarantee for a complete and accurate description of its contents.

## THE AGREEMENTS

15.    States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 15, and refers the Court to the CSA for a complete and accurate description of its contents, except admits that the CSA is dated October 19, 2017.

16.    States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 16, and refers the Court to the CSA for a complete and accurate description of its contents.

17.    States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 17 and refers the Court to the CSA for a complete and accurate description of its contents.

18.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 18, and refers the Court to the CSA for a complete and accurate description of its contents.

19.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA (and Exhibit 1 to the CSA) in Paragraph 19, and refers the Court to the CSA for a complete and accurate description of its contents.

20.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 20, and refers the Court to the CSA for a complete and accurate description of its contents.

21.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA or any "acknowledgements" or "agreements" entered into by the parties as described in Paragraph 21, and refers the Court to the CSA for a complete and accurate description of its contents.

22.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA or any reservations of rights by the parties as described in Paragraph 22, and refers the Court to the CSA for a complete and accurate description of its contents.

23.     To the extent that "Event of Default" as defined in Paragraph 23 states a legal conclusion, Defendant asserts that no response is required.  To the extent that a response is required, Defendant states that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA as described in Paragraph 23, and refers the Court to the CSA for a complete and accurate description of its contents.

24.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 24, and refers the Court to the CSA for a complete and accurate description of its contents.

25.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 25, and refers the Court to the CSA for a complete and accurate description of its contents.

26.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 26, and refers the Court to the CSA for a complete and accurate description of its contents.

27.     States that the Guarantee speaks for itself and is the best evidence of its contents, specifically denies any characterization of the Guarantee in Paragraph 27 except admits that the Guarantee was executed on October 18, 2017, and refers the Court to the Guarantee for a complete and accurate description of its contents.

28.     States that the Guarantee speaks for itself and is the best evidence of its contents, specifically denies any characterization of the Guarantee in Paragraph 28, and refers the Court to the Guarantee for a complete and accurate description of its contents.

29.     States that the Guarantee speaks for itself and is the best evidence of its contents, specifically denies any characterization of the Guarantee in Paragraph 29, and refers the Court to the Guarantee for a complete and accurate description of its contents.

30.     States that the Guarantee speaks for itself and is the best evidence of its contents, specifically denies any characterization of the Guarantee in Paragraph 30, and refers the Court to the Guarantee for a complete and accurate description of its contents.

31.     Denies the allegations contained in Paragraph 31 of the Complaint, and refers the Court to the CSA for a complete and accurate description of its contents.

32.     Admits that Xcoal sent a notice on March 16 specifying load dates of April 1, 3, 5, 7, and 9, but denies that the load dates were commercially reasonable and further alleges that: (a) Xcoal knew the load dates were unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; and (b) Xcoal never expected to take delivery on those dates.

33.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Complaint, except admits that, in general, coal purchased for export into the international market is transported by rail for subsequent loading onto an oceangoing vessel.

34.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint, and on that basis denies the allegations in full.

35.     Denies the allegations contained in Paragraph 35 of the Complaint, and further alleges that: (a) Xcoal knew the load dates were commercially unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; (b) Xcoal demanded unilateral terms and conditions on the loading of trains that were not set forth in the CSA; (c) Xcoal failed to provide assurances as requested by Bluestone relating to Xcoal's compliance with the CSA; and (d) Xcoal continued to send form notices relating to an April shipping schedule that was unilaterally established by Xcoal and never agreed to by Bluestone.

36.     States that the April 17, 2018 letter speaks for itself and is the best evidence of its contents, specifically denies any characterization of the April 17, 2018 letter in Paragraph 36, and

refers the Court to the April 17, 2018 letter for a complete and accurate description of its contents. Denies all other allegations contained in Paragraph 36 of the Complaint and further alleges that (a) Xcoal knew the load dates were commercially unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; (b) Xcoal demanded unilateral terms and conditions on the loading of trains that were not set forth in the CSA; (c) Xcoal failed to provide assurances as requested by Bluestone relating to Xcoal's compliance with the CSA; and (d) Xcoal continued to send form notices relating to an April shipping schedule that was unilaterally established by Xcoal and never agreed to by Bluestone.

37.     States that the April 17, 2018 letter speaks for itself and is the best evidence of its contents, specifically denies any characterization of the April 17, 2018 letter in Paragraph 37, and refers the Court to the April 17, 2018 letter for a complete and accurate description of its contents. Denies all other allegations contained in Paragraph 37 of the Complaint.

38.     Admits the allegations contained in Paragraph 38 of the Complaint.

39.     States that the CSA and the April 17, 2018 e-mail exchange speak for themselves and are the best evidence of their contents, specifically denies any characterization of the CSA and April 17, 2018 e-mail exchange in Paragraph 39, and refers the Court to both documents for a complete and accurate description of their contents.  Denies all other allegations contained in Paragraph 39 of the Complaint.

40.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, except admits that Bluestone was provided with applicable permit numbers for each scheduled loading in May 2018.  However, as Bluestone informed Xcoal, the railroad failed to timely deliver Bishop railcars for the coal shipments.  This

delay caused by the railroad was outside of Bluestone's control and cannot be imputed to Bluestone.

41.    Denies the allegations contained in Paragraph 41 of the Complaint that Bluestone was not "ready to load" on the first of five scheduled coal load dates in May 2018. ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Bluestone thus expressly rejected Xcoal's notice of failure to timely load the May 2, May 5 and May 9 trains.

42.    States that the May 3, 2018 written notice speaks for itself and is the best evidence of its contents, specifically denies any characterization of the May 3, 2018 written notice in Paragraph 42 and footnote 3, and refers the Court to the May 3, 2018 written notice letter for a complete and accurate description of its contents.

43.    States that the May 6, 2018 written notice speaks for itself and is the best evidence of its contents, specifically denies any characterization of the May 6, 2018 written notice in Paragraph 43, and refers the Court to the May 6, 2018 written notice letter for a complete and accurate description of its contents.  Denies all other allegations contained in Paragraph 43 of the Complaint.

44.    Denies the allegations contained in Paragraph 44 of the Complaint, except admits

██████████████████████████████████████████████

45.     Denies the allegations contained in Paragraph 45 of the Complaint and specifically

asserts ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████ and the coal supplied by Bluestone met this specification.

46.     Paragraph 46 of the Complaint states a legal conclusion to which no response is

necessary.  To the extent a response is necessary, the Bluestone Defendants deny the allegations

and refer the Court to the CSA for a complete and accurate description of its contents.

47.     Denies the allegations contained in Paragraph 47 of the Complaint, and refers the

Court to the referenced third notice for a complete and accurate description of its contents.

48.     Denies the allegations contained in Paragraph 48 of the Complaint and footnote 4,

and asserts that any failures to process and load coal were excused under Article 9 of the CSA as

a result of a force majeure event (heavy rains in Southern West Virginia) that caused the Bishop

Impoundment to be shut down for several weeks in May 2018.  The Bluestone Defendants

informed Xcoal of this force majeure event in notices dated May 19, 2018 and May 29, 2018.

Specifically relating to Xcoal's contentions in footnote 4, the Bluestone Defendants deny that they

failed to provide Xcoal with "detailed evidence from an independent third party as to the

occurrence of the force majeure and the expected duration thereof."  Bluestone's notice dated May

31, 2018 includes an attachment issued by the U.S. Department of Labor Mine Safety and Health

Administration, which relates to the pool level of the impoundment area.

49.     Admits that as of May 31, 2018, Bluestone ███████████████████
███████████████████████████████████████████████████████████████████
████████████████████████████ as the force majeure event (heavy rains in Southern West Virginia) that shut down the Bishop Impoundment temporarily excused Bluestone's performance under Article 9 of the CSA.

50.     Paragraph 50 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, the Bluestone Defendants deny the allegations and refer the Court to the CSA for a complete and accurate description of its contents.

51.     Paragraph 51 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, the Bluestone Defendants deny the allegations, except admit that Xcoal sent Bluestone a written notice dated May 31, 2018, and refer the Court to the May 31, 2018 notice and to the CSA for a complete and accurate description of their contents.

52.     Paragraph 52 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, the Bluestone Defendants deny the allegations, assert that any failure to deliver the required amounts of coal in May 2018 was excused due to the force majeure event under Article 9 of the CSA, and refer the Court to the CSA for a complete and accurate description of its contents.

53.     Denies the allegations contained in Paragraph 53 of the Complaint.  Moreover, Bluestone asserts that Xcoal has disregarded Article 5.2 of the CSA by advising SGS to not deliver the results of the coal's analysis to Bluestone and instead advising SGS that the results were only to be delivered upon Xcoal's instructions.

54.     Denies the allegations contained in Paragraph 54 of the Complaint.

55.     Denies the allegations contained in Paragraph 55 of the Complaint; although, in general, while Xcoal advised Bluestone of the loading dates and quantity of coal to be delivered, the delivery dates proposed by Xcoal were commercially unreasonable.  Bluestone advised Xcoal on numerous instances that the CSA does not give Xcoal the "unilateral right" to schedule trains. Bluestone informed Xcoal that Xcoal's continued repudiation of the express terms of the CSA (by, for example, violating the provisions relating to sampling for shipments under Section 5.3) entitles Bluestone to suspend shipments until Xcoal provided assurances that it would comply with the CSA.

56.     Bluestone denies that all the delivery dates proposed by Xcoal were commercially reasonable, and further alleges that: (a) Xcoal knew the proposed load dates were commercially unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; and (b) Xcoal never expected to take delivery on those dates.  Bluestone further denies the other allegations in Paragraph 56 and footnote 6.

57.     Denies the allegations contained in Paragraph 57 of the Complaint, and refers the Court to the referenced "parties' agreement and amendment to the CSA" for a complete and accurate description of its contents.

58.     Bluestone admits that it loaded three trains on November 11, 18, and 28, 2017, and that testing at loadout confirmed that the coal's quality was compliant with the specifications in the CSA.  Bluestone denies the remaining allegations in Paragraph 58.

59.     Denies the allegations contained in Paragraph 59 of the Complaint, and refers the Court to the referenced CSA for a complete and accurate description of its contents.

60.     Paragraph 60 of the Complaint states a legal conclusion to which no response is necessary.  To the extent a response is necessary, the Bluestone Defendants deny the allegations.

61.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint and footnote 7, except admits that Bluestone informed Xcoal that it would be loading "split trains" on rail permits issued by the railroad. Specifically relating to footnote 7, Bluestone denies the allegations contained therein and asserts that although Xcoal sent proposed loading dates for December 2017, Bluestone never mutually agreed to all of the shipment dates in question. When provided with Xcoal's dates, Bluestone replied with its own proposed dates, some of which coincided with Xcoal's dates and some of which did not.

62.     Denies the allegations contained in Paragraph 62 of the Complaint, and refers the Court to the referenced CSA for a complete and accurate description of its contents.

63.     Denies the allegations contained in Paragraph 63 of the Complaint, and further alleges that: (a) Xcoal knew the proposed load dates were commercially unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; and (b) Xcoal never expected to take delivery on those dates.

64.     Denies that it ever failed, without legal justification, to meet a commercially reasonable load date and further denies that all the delivery dates proposed by Xcoal were commercially reasonable, and further alleges that: (a) Xcoal knew the proposed load dates were commercially unreasonable because Bluestone could not physically load the coal fast enough to meet the scheduled load dates; and (b) Xcoal never expected to take delivery on those dates. Further denies that Xcoal's demands to observe loading and/or have the coal tested justified an unreasonable load schedule. Denies any remaining allegations in Paragraph 64 of the Complaint.

65.     States that the CSA speaks for itself and is the best evidence of its contents, specifically denies any characterization of the CSA in Paragraph 65, and refers the Court to the

CSA for a complete and accurate description of its contents. Denies all other allegations contained in Paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint states a legal conclusion to which no response is necessary. To the extent a response is necessary, the Bluestone Defendants deny the allegations and refer to the Court to the CSA for a complete and accurate description of its contents.

67.     Paragraph 67 of the Complaint states a legal conclusion to which no response is necessary. To the extent a response is necessary, the Bluestone Defendants deny the allegations.

68.     Paragraph 68 of the Complaint states a legal conclusion to which no response is necessary. To the extent a response is necessary, the Bluestone Defendants deny the allegations in Paragraph 68 and footnote 8, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ These payment failures represented a default under the CSA.  Bluestone informed Xcoal at the time that the suspension would be lifted when Xcoal submitted payment for the 30-car shipment and provided assurances that it would follow the CSA's payment terms going forward.

69.     Paragraph 69 of the Complaint states a legal conclusion to which no response is necessary. To the extent a response is necessary, the Bluestone Defendants deny the allegations.

70.     States that the Guarantee and referenced written notice speak for themselves and are the best evidence of their contents, specifically denies any characterization of the Guarantee and referenced written notice in Paragraph 70, and denies the allegations contained in the written

notices or that the notices were legally or factually justified.  Denies all other allegations contained in Paragraph 70 of the Complaint, except admits that Xcoal issued written notice to the Guarantors.

71.     States that the Guarantee and referenced written notice speak for themselves and are the best evidence of their contents, specifically denies any characterization of the Guarantee and referenced written notice in Paragraph 71, and denies the allegations contained in the written notices or that the notices were legally or factually justified.  Denies all other allegations contained in Paragraph 71 of the Complaint, except admits that three notices were dated May 3, 6, and 10, 2018.

72.     States that the referenced written notices speak for themselves and are the best evidence of their contents, specifically denies any characterization of the referenced written notices in Paragraph 72, and denies the allegations contained in the written notices (as a result of the force majeure event that impacted Bluestone's Bishop Impoundment in May 2018) or that the notices were legally or factually justified.  Denies all other allegations contained in Paragraph 72 of the Complaint, except admits that two notices were sent on May 14 and 20, 2018.

73.     States that the "failures" identified in Xcoal's notices dated May 3, 6, and 10, 2018 were excused under Article 9 of the CSA due to the force majeure event at the Bishop Impoundment, and denies all other allegations contained in Paragraph 73 of the Complaint.

74.     States that the Guarantors ████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████ due to the force majeure event at the Bishop Impoundment, and denies all other allegations contained in Paragraph 74 of the Complaint.

## COUNT I – BREACH OF THE CSA

### (Xcoal v. Bluestone)

75.     The Bluestone Defendants reallege and incorporate herein by reference, as though set forth in full, its answers to the allegations contained in Paragraphs 1 through 74, inclusive.

76.     Denies the allegations contained in Paragraph 76 of the Complaint.

77.     Denies the allegations contained in Paragraph 77 of the Complaint.

78.     Denies the allegations contained in Paragraph 78 of the Complaint.

79.     Denies the allegations contained in Paragraph 79 of the Complaint.

80.     Denies the allegations contained in Paragraph 80 of the Complaint, denies that Plaintiff is entitled to any relief sought therein, and denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Xcoal's purported rail charges, vessel charges, and other damages and on that basis denies them in full.

## COUNT II – BREACH OF THE GUARANTEE

### (Xcoal v. SCC and Justice )

81.     The Bluestone Defendants reallege and incorporate herein by reference, as though set forth in full, its answers to the allegations contained in Paragraphs 1 through 80, inclusive.

82.     Denies the allegations contained in Paragraph 82 of the Complaint.

83.     Denies the allegations contained in Paragraph 83 of the Complaint.

84.     Denies the allegations contained in Paragraph 84 of the Complaint.

85.     Denies the allegations contained in Paragraph 85 of the Complaint.

86.     Denies the allegations contained in Paragraph 86 of the Complaint, and refers the Court to the referenced Guarantee for a complete and accurate description of its contents.  Denies that Plaintiff is entitled to any relief sought therein.

## COUNT III – DECLARATORY RELIEF

### (on behalf of all Plaintiffs and the Nationwide Class)

87.     The Bluestone Defendants reallege and incorporate herein by reference, as though set forth in full, its answers to the allegations contained in Paragraphs 1 through 86, inclusive.

88.     Denies the allegations contained in Paragraph 88 of the Complaint.

89.     Denies the allegations contained in Paragraph 89 of the Complaint.

90.     Denies the allegations contained in Paragraph 90 of the Complaint.

91.     Denies the allegations contained in Paragraph 91 of the Complaint.

92.     Denies the allegations contained in Paragraph 92 of the Complaint, and further denies that Plaintiff is entitled to any relief sought therein.

### AFFIRMATIVE DEFENSES

By way of affirmative defenses to the claims for relief alleged in the Complaint, the Bluestone Defendants allege as follows:

### FIRST AFFIRMATIVE DEFENSE

The purported CSA resulted from fraud, deceit and various misrepresentations by the Plaintiff and is therefore not a valid agreement binding on the Bluestone Defendants.

### SECOND AFFIRMATIVE DEFENSE

In the alternative, the Bluestone Defendants did not owe any duties under the purported CSA because of the Plaintiff's material breaches thereof.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that they relate to the CSA and Guarantee, as both documents are invalid because they were entered into based on Plaintiff's false representations that it would reasonably execute and administer the contract.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the failure to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under 6 *Del. C.* § 1-304, which imposes an obligation of good faith in the performance of every contract, based on Plaintiff's unreasonable execution and administration of the CSA.

## SIXTH AFFIRMATIVE DEFENSE

Due to the lack of information as to the matters set forth in the Complaint, and each purported cause of action therein, the Bluestone Defendants have insufficient knowledge or information on which to form a belief as to whether they have additional, as yet unstated, affirmative defenses available.  Therefore, the Bluestone Defendants reserve their right to assert additional affirmative defenses in the event that discovery indicates said defenses are proper.

## PLAINTIFFS' PRAYER FOR RELIEF

Defendants admit that Plaintiff seeks relief as described in the Complaint, but deny that Plaintiff is entitled to any relief whatsoever.

## BLUESTONE DEFENDANTS' COUNTERCLAIMS

Bluestone Energy Sales Corporation ("Bluestone"), Southern Coal Corporation ("Southern Coal") and James C. Justice, II ("Justice") (collectively referenced herein as the "Bluestone Defendants") hereby assert the following Counterclaims against Plaintiff/Counterclaim-Defendant Xcoal Energy & Resources ("Xcoal").

### Background

### The Parties, Jurisdiction and Venue

1.     Bluestone is a Delaware corporation with its principal place of business in Roanoke, Virginia.

2.     Southern Coal is a Delaware corporation with its principal place of business in Roanoke, Virginia.   Southern Coal is affiliated with Bluestone and the other counterclaim-plaintiffs.

3.     James C. Justice, II is a citizen and resident of West Virginia, and his family serves as the principal owners of the Bluestone and Southern Coal counterclaim-plaintiffs.

4.     Xcoal is, upon information and belief, a Pennsylvania limited partnership with its principal place of business in Latrobe, Pennsylvania.   Mr. Ernie Thrasher serves as Xcoa's principal owner and sole member.

5.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it is between citizens and residents of different states and because the amount in controversy, excluding interest and costs, exceeds $75,000.00.

6.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, as certain of the Bluestone Defendants are incorporated in Delaware and the parties have agreed that the U.S.

District Court for the District of Delaware shall have exclusive jurisdiction over any disputes arising under the CSA and/or Guarantee.

### Background

7.     The Bluestone Defendants are engaged in the business of mining and selling coal.

8.     The Bluestone Defendants and Xcoal have a long history of business dealings – and litigation arising out of those business dealings. Since 2011, the Bluestone Defendants and Xcoal have executed several different purchase order requirements and Coal Supply Agreements ("CSA") under which Xcoal was obligated to purchase certain net tons of coal supplied by the Bluestone Defendants.

9.     In June 2012, Southern Coal commenced a civil action against Xcoal and Thrasher and in April 2013, Southern Coal filed a Second Amended Complaint. Southern Coal alleged that despite a purchase order requiring that Xcoal buy substantial sums of coal from Southern Coal, Xcoal had not made any orders of coal.

10.    Despite assurances from Thrasher that Xcoal would meet their contractual obligations and take all of the coal that they were contractually obligated to take, Xcoal still did not place orders for coal.

11.    In July 2013, Thrasher and Justice engaged in a series of meetings in an attempt to resolve the lawsuit.   During the meeting, the parties discussed a business solution ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

12.    Southern Coal relied upon ██████████████████, as well as on representations by Xcoal ████████████████████████████████████████████████████████████

████████

13.     After signing the Mutual Release, however, Southern Coal learned that Xcoal did not intend to perform.  Notably, Xcoal failed to honor its commitment to purchase ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████

14.     Due to these breaches, and others, Southern Coal sent a notice of default to Xcoal on March 27, 2014.  Following receipt of the notice of default, ████████████████████

████████████████████████████████████████████████████████████████████

Instead, after taking delivery of the coal, Xcoal announced it had cancelled the Coal Supply Agreement and refused to make the payments it owed to Southern Coal.

15.     Thus, in a subsequent lawsuit, Southern Coal alleged that Xcoal materially breached the Mutual Release by purporting to cancel the CSA and otherwise void the agreement.

16.     After contentious litigation, depositions and a several-day trial in spring 2017, the parties ████████████████████████████ Southern Coal's expectation was that the parties would enter into a new business arrangement, ████████████████████████

████████████████████████████████████████████████

17.     This new CSA – and whether the parties have met their obligations under the CSA – forms the basis of Xcoal's claims against the Bluestone Defendants, as well as the Counterclaims alleged herein.

18.     In all instances where the Bluestone Defendants and Xcoal have negotiated settlements and formed new CSAs, Thrasher primarily handled negotiations on behalf of Xcoal.

**Facts Concerning Xcoal's Breach of Contract and Fraudulent Inducement**

19.     The CSA at issue in this action, executed by both parties in September 2017, called for the Bluestone Defendants to sell and deliver ████████████████████████████████

███████████████████████████████████████████████████████

████████████ to be purchased by Xcoal.

20.     As part of the CSA, Xcoal agreed a pricing formula that included ████████

████████████████████████████████████ However, since the CSA was signed,

shipping rates have been increasing such that the economics of the CSA are now less favorable to

Xcoal than they were when the CSA was signed.

21.     As part of the CSA, ████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ See CSA, Performance Guarantee Agreement.

22.     Soon after the contractual period began, Xcoal wrongfully rejected the first

shipment of coal sent by the Bluestone Defendants.  As called for under the CSA, an independent

test for quality confirmed the shipment satisfied the specifications in the CSA.  However, Xcoal

alleged that further testing at the dock showed the coal did not satisfy the specifications in the CSA

and on that basis refused to use independent test results as agreed upon in the CSA and rejected

the shipment.

23.     Xcoal and Thrasher continued to place unreasonable commercial demands for coal

shipments from Bluestone that went beyond the scope of the parties' agreements in the CSA.  For

example, Xcoal requested that Bluestone ship five trains of coal in five days at the beginning of

each month – which Xcoal knew was beyond the capacity of the coal loading facility owned by

the Bluestone Defendants – and then followed with a separate demand to have a different

laboratory other than the laboratory specified in the CSA conduct the coal sampling and testing at

loading.

24.     Relating to required payments, upon information and belief, ████████████
██████████████████████████████████████████████████████████████████

25.     According to the CSA, the laboratory selected to be in charge of the coal's testing is SGS's Beckley, West Virginia laboratory.  CSA § 5.2(a).  Yet, upon information and belief, Xcoal blocked SGS from sending the coal's analysis to Bluestone in accordance with the CSA. Upon information and belief, Xcoal blocked the testing results from being sent in order to delay its payment obligation under the CSA from being triggered.

26.     The Bluestone Defendants attempted to reach out to Xcoal and Thrasher when disagreements arose.  On April 17, 2018, Bluestone sent a letter to Thrasher seeking to obtain Xcoal's May 2018 loading dates.

27.     In May 2018, the Bluestone Defendants sent two notices to Xcoal (dated May 19 and 31, 2018) pursuant to Article 9 of the CSA explaining that a force majeure event (heavy rainfall) had caused its Bishop Impoundment to shut down, impacting the processing and loading of coal.  The notices stated that the mine should be back at capacity within several weeks, and that Bluestone would keep Xcoal apprised of the progress.

28.     The notices stated: "Please be advised we will continue to ship coal, however it will be at a significantly reduced capacity until this situation is abated."  The force majeure event impaired the Bluestone Defendants' capacity to perform, meaning that it was impossible for Bluestone to timely and fully load coal under the CSA during May 2018 through no fault of its own.  Bluestone informed Xcoal of this issue in a formal and timely manner.

29.     Despite Bluestone's notification to Xcoal of the force majeure event, and attempts to reach a solution relating to other disputes about loading dates, Xcoal filed this action against the Bluestone Defendants on May 31, 2018, improperly alleging that the Bluestone Defendants

breached their obligations under the CSA and Guarantee by failing to timely supply the quantity and quality of coal required under the CSA.  See Complaint.

## Counterclaim Count I – Breach of Contract by Xcoal

30.     The Bluestone Defendants incorporate by reference the allegations contained in paragraphs 1-29 of this Counterclaim as if fully set forth herein.

31.     Xcoal and the Bluestone Defendants entered into the CSA and Guarantee ████

████████████████████████████████████████████████████████████

32.     Xcoal breached the CSA by unreasonably rejecting shipments of coal, placing commercially unreasonable demands on the shipment of coal that went beyond Bluestone's shipment capabilities, failing to timely pay for true-up payments, blocking SGS from sending an analysis of the rejected coal to Bluestone, and not accepting the existence of a force majeure event under Article 9 of the CSA.  Xcoal now wrongfully seeks to terminate its obligations under the CSA.

33.     The Bluestone Defendants (including Guarantors Southern Coal and Justice) have been damaged as a direct and proximate result of Xcoal's breach.

## Counterclaim Count II – Fraudulent Inducement by Xcoal

34.     The Bluestone Defendants incorporate by reference the allegations contained in paragraphs 1 -33 of this Counterclaim as if fully set forth herein.

35.     Xcoal, through its representative Thrasher, represented to the Bluestone Defendants during CSA negotiations in October 2017 that it intended to satisfy and commercially fulfill its obligations under the CSA.

36.     Yet, the actions of Xcoal and Thrasher from the outset have demonstrated that they never intended on fulfilling their obligations and knew that their representations were false when made, or made the representations were made recklessly and without regard for their truth.

37.     Xcoal intended for the Bluestone Defendants to rely on these factual misrepresentations so they could induce Southern Coal and Justice to enter into the Guarantee.

38.     ████████████████████████████████████████
████████████████████████████

39.     Given that Xcoal and the Bluestone Defendants are long-time business partners in the coal industry, and given the Bluestone Defendants' belief that the CSA and Guarantee were entered into in good faith as a means of serving as a Settlement Agreement to a previous lawsuit, the Bluestone Defendants reasonably relied on the misrepresentations in entering into the CSA and Guarantee.

40.     As a direct and proximate result of Xcoal's fraud, the Bluestone Defendants, and specifically Southern Coal and Justice, have suffered and will continue to suffer substantial damages in an amount to be determined at trial.

41.     Xcoal and Thrasher acted willfully, oppressively, maliciously and in wanton and conscious disregard of the rights of the Bluestone Defendants.  Therefore, punitive damages should be assessed against Xcoal in an amount that will be sufficient to discourage Xcoal from such fraudulent conduct in the future.

## Counterclaim Count III – Declaratory Judgment

42.     The Bluestone Defendants incorporate by reference the allegations contained in paragraphs 1-41 of this Counterclaim as if fully set forth herein.

43.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the Bluestone Defendants seek a determination of the parties' respective rights and obligations with regard to the Guarantee.

44.     An actual controversy has arisen between Xcoal and the Bluestone Defendants, as a result of Xcoal's decision to seek to terminate the CSA.

45.     The Bluestone Defendants contend that Xcoal has breached the CSA by unreasonably rejecting shipments of coal, placing unreasonable demands on the shipment of coal that went beyond Bluestone's shipment capabilities, ██████████████████████████ and blocking SGS from sending an analysis of the rejected coal to Bluestone.

46.     The Bluestone Defendants contend that Xcoal, led by chief negotiator Ernie Thrasher, fraudulently induced the Bluestone Defendants to enter into the CSA in October 2017, as a pretext for attempting to extract a guarantee from Southern Coal and Justice.

47.     The Bluestone Defendants seek a declaration that such action by Xcoal is a breach of the CSA, and thus serves to render the Guarantee as null and void.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, the Bluestone Defendants respectfully pray that this Court:

A.      Dismiss Plaintiff's claims with prejudice in their entirety;

B.      Enter judgment in favor of the Bluestone Defendants on Plaintiff's claims;

C.      Enter judgment for the Bluestone Defendants on their Counterclaim for Breach of Contract;

D.      Enter judgment for the Bluestone Defendants on their Counterclaim for Fraudulent Inducement;

E.      Enter a declaration that Xcoal's breach of the CSA and fraudulent inducement of the Bluestone Defendants to enter into the CSA negates the Guarantee signed by Southern Coal and Justice as an exhibit to the CSA, rendering any obligations thereunder null and void;

F.      Award the Bluestone Defendants their damages, attorneys' fees and costs arising out of this matter, including punitive damages in an amount to be proven at trial, as well as pre- and post-judgment interest;

G.      Award the Bluestone Defendants such other relief as this Court deems just and proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Mark Robeck *(pro hac vice pending)*
Mindy Pava *(pro hac vice pending)*
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, DC 20007
Tel:  (202) 342-8415

Dated:  June 25, 2018
5851788 / 45201
Public Version Dated: June 27, 2018

By:  */s/ John A. Sensing*
John A. Sensing (#5232)
Jennifer Penberthy Buckley (#6264)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
jsensing@potteranderson.com
jbuckley@potteranderson.com

*Attorneys for Defendants*