# Attachment A

[SEALED]

1

*sealed and confidential*

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -
     XCOAL ENERGY & RESOURCES,          :  CIVIL ACTION
 4                                      :
                 Plaintiff,             :
 5   v                                  :
                                        :
 6   BLUESTONE ENERGY SALES CORPORATION,:
     SOUTHERN COAL CORPORATION, and     :
 7   JAMES G. JUSTICE, II,              :  NO. 18-819-LPS

 8              Defendants.
                                - - -
 9
                         Wilmington, Delaware
10                   Tuesday, August 25, 2020
            Sidebar Conference Bench Trial - Volume A
11
                                - - -
12
     BEFORE:       HONORABLE LEONARD P. STARK, Chief Judge
13
                                - - -
14    APPEARANCES:

15
                 BUCHANAN INGERSOLL & ROONEY, PC
16               BY:  GEOFFREY G. GRIVNER, ESQ.

17               and

18               BUCHANAN INGERSOLL & ROONEY, PC
                 BY:  KEVIN P. LUCAS, ESQ., and
19                    DANIEL C. GARFINKEL, ESQ.
                      (Pittsburgh, Pennsylvania)
20
                          Counsel for Plaintiff
21

22
     Valerie J. Gunning              Brian P. Gaffigan
23   Official Court Reporter         Official Court Reporter

24

25
```

## Page 2

1  APPEARANCES: (Continued)
2
3  POTTER ANDERSON & CORROON, LLP
   BY: JOHN A. SENSING, ESQ.
4
       and
5
   THE GETTY LAW GROUP, PLLC
6  BY: RICHARD A. GETTY, ESQ., and
       DANIELLE HARLAN, ESQ.
7      (Lexington, Kentucky)

          Counsel for Defendants
8
...
23           - oOo -
24        P R O C E E D I N G S
25     (Virtual sidebar conference.)

## Page 3

1   THE COURT: I can see Mr. Lucas and Mr. Grivner.
2   Any of you, and Mr. --
3   MR. LUCAS: Mr. Garfinkel, Your Honor.
4   THE COURT: I see Mr. Garfinkel.
5   And there's Mr. Getty.
6   I don't know if my court reporter is here. I'm
7   seeing five participants.
8   THE COURT REPORTER: Yes, I'm here, sir.
9   THE COURT: Okay. Wonderful.
10  Marco, are you there?
11  MR. LUCAS: Your Honor, I believe he indicated
12  to us before that he would not be in the sidebar.
13  THE COURT: Okay. That's fine. I'm
14  comfortable, if you are, that the folks who are here are
15  those that I just listed as well as my court reporter
16  listening in.
17  If you are comfortable with that, Mr. Getty, you
18  can proceed.
19  MR. GETTY: Yes, that's fine, Your Honor.
20  I need to bring to your attention, to the
21  Court's attention, something that in 46 years of practicing
22  law I have never experienced. It's really quite serious,
23  and I feel like I am professionally, ethically obligated
24  to bring it to the Court's attention.
25  I also am sitting here wondering whether I have

## Page 4

1   further obligations to turn a letter that I have received
2   over to the Federal Bureau of Investigation and the U.S.
3   Attorney in Pittsburgh.
4       This morning, I arrived -- I received this
5   literally as I walked in here. My secretary was off
6   yesterday. I gave her the day off because we had worked so
7   hard. But she came to the office this morning, and there
8   is a letter addressed to me dated August 14th and it was
9   mailed on August 19th in Pittsburgh. It was mailed to our
10  old office address, which probably explains why it just
11  arrived at our new office, you know, yesterday. But my
12  secretary Kelly came in, opened it, and immediately got it
13  here to us in Roanoke.
14      So I literally read it as I walked into the room
15  shortly before the opening statements.
16      But it's a letter to me, and it's from a
17  person who says they want to share information concerning
18  the lawsuit between Bluestone and Xcoal. They say they are
19  associated with Xcoal and that the information comes from
20  that association.
21      The letter goes on to say, and I'd like to get
22  it -- I feel like I'm obligated to provide it to the Court,
23  but I'll outline it for you while we're speaking.
24      It says that during the mediation from the
25  previous lawsuit, "Mr. Ernie Thrasher was afraid of a court

## Page 5

1   ruling and" --
2   MR. LUCAS: May I interrupt? I think, actually,
3   I would like this on the record.
4   THE COURT: Well, you mean in public?
5   MR. LUCAS: No, no, not a public record. I
6   would like it on a transcript from the court reporter.
7   THE COURT: Right. The court reporter is taking
8   this down.
9   MR. LUCAS: Oh, he is? I'm sorry. I
10  misunderstood. I thought you said he wasn't.
11  I apologize, Your Honor.
12  THE COURT: Mr. Gaffigan, you are there; right?
13  THE COURT REPORTER: Yes, Your Honor; and I have
14  taken everything down.
15  THE COURT: All right. We'll continue then.
16  Mr. Getty, you may proceed.
17  MR. GETTY: Thank you, Your Honor.
18  "Mr. Thrasher was afraid of the court ruling
19  and planned a method to have a guarantee by Governor
20  Justice then cause a default by Bluestone. In July 2017,
21  Mr. Thrasher's comments were to have an agreement with a
22  guarantee by Governor Justice. The coal sales agreement
23  has a guarantee by Governor Justice capped at 10 million.
24  Mr. Thrasher was elated. His plan was to force Bluestone to
25  default and collect the money from Governor Justice. Any

## Page 6

*sealed and confidential*

1  additional damages would be an extra benefit.  His plan
2  was to cause default by delayed coal shipments, withhold
3  payments, and extract penalties from Bluestone.
4          "Ask their expert witness Pain --" in parens,
5  it's spelled P-A-I-N.  His name is actually P-A-Y-N-E.)
6  "Ask their expert witness Pain about delayed payments.
7  Thrasher has not paid him.
8          "The coal penalties from lab results were false.
9  Xcoal has someone inside SGS and Standard Lab.  Charleston,
10 West Virginia is dependent on the coal" -- "Xcoal business.
11         "On previous trains, Rick Taylor directed the
12 lab to obtain fault results.
13         "E. Thrasher has not offered a position" --
14 "was not offered a position at AMCI because of lawsuits and
15 reputation of false lab reports, slow pay, rejected coal.
16 He continued these practices at Xcoal.
17         "Xcoal is a major shipper on Norfolk
18 Southern" -- NS, but I assume it's Norfolk Southern --
19 "and receives favored treatment, including special rates.
20         "Mr. Thrasher screws everyone including
21 employees, his family, and three others do well, the rest
22 suffer.
23         "Xcoal -- Signed, Xcoal whistleblower."
24         The letter is obviously written by someone who
25 has personal or inside knowledge of this litigation and

## Page 7

*sealed and confidential*

1  Mr. Thrasher and Mr. Thrasher's conduct.
2          I was stunned when I read it.  I've got to be
3  honest with you.  I'm sitting here stunned again.
4          You know, I feel I'm ethically obligated to
5  provide it to the Court and I feel like I've got to, you
6  know, turn it over to the law enforcement officials at
7  this point.
8          It basically -- it basically tracks and confirms
9  some of what we have believed and, you know, hope to intend
10 to prove in this litigation.  But I got to be honest with
11 you, Judge, I -- the letter has left me almost speechless.
12 I, you know, I never, never anticipated that anything like
13 this would happen.  And I have been doing this stuff, you
14 know, four more years will be 50 years, if I can last that
15 long.
16         But -- so I -- you know, I would like to send
17 it to the Court and have it sealed and be a part of -- I
18 guess part of this record.  And I don't know what the Court,
19 you know -- you know, the Court may feel -- the Court has
20 obligations here in connection with this.
21         But I felt like I couldn't, you know, I could
22 not, I could not wait.  So I waited until after the
23 openings, and I felt I had to bring it to the Court's
24 attention as soon as possible.
25         THE COURT:  All right.  Certainly I think you

## Page 8

*sealed and confidential*

1  should send it to me, and, of course, to Mr. Lucas.  So ask
2  your staff somehow to find a secure way to do that.  And
3  eventually it will need to end up as a sealed document in
4  our record.
5          I'm not hearing what it is, if anything, you are
6  asking for in terms of relief in connection with the trial
7  that we're in the midst of.
8          MR. GETTY:  Well, you know, honestly, Judge, I'm
9  sitting here baffled as to what needs to be done.  Obviously,
10 I feel like we, we should be able to investigate this.  You
11 know, it could be significant.  I mean, I can't imagine
12 anything more significant.
13         THE COURT:  Okay.  All right.
14         MS. HARLAN:  If I may, Your Honor?  I apologize.
15 This is Danielle Harlan.  If you could advise which
16 (inaudible, and muffled) --
17         THE COURT REPORTER:  Your Honor, I cannot hear
18 her.
19         THE COURT:  Okay.  I missed --
20         MR. LUCAS:  Your Honor, may I be heard on this?
21         THE COURT:  Yes.
22         MS. HARLAN:  I forgot I have --
23         MR. LUCAS:  People start sending things that I
24 haven't seen, so I keep quiet --
25         THE COURT:  Yes.  I want to make sure that we're

## Page 9

*sealed and confidential*

1  getting a clear record.
2          MS. HARLAN:  I had my mask on.  I apologize.
3          THE COURT:  That's okay.  It's Ms. Harlan; is
4  that right.
5          MS. HARLAN:  Yes, Your Honor.
6          THE COURT:  And you were asking for an e-mail
7  address; is that right?
8          MS. HARLAN:  That's correct, Your Honor.
9          THE COURT:  Okay.  Let's come back to that.
10 But thank you for raising the question.
11         Mr. Lucas, yes, you may be heard.
12         MR. LUCAS:  Your Honor, I know nothing about
13 this.  I want to raise a preliminary issue, though.
14         Before this sidebar was taking place, I asked
15 Mr. Getty, is there anything he and I needed to talk about
16 in advance of the sidebar, and he decline to say we should
17 have some discussion.
18         So I'm now confronted with a letter whose
19 authenticity source is totally unknown at this point, with
20 statements being made by Mr. Getty in a nonjury trial to
21 the Court about matters that in my mind shouldn't have been
22 said to the Court in a nonjury case.
23         Now, I don't know what I would think what the
24 proper procedure would be.  I mean, this is obviously
25 something he's saying he didn't know about.  It's certainly

10

sealed and confidential

1 something I don't know about.
2 But this has me really concerned now. This
3 idea that we're going to start sending around some document
4 who we don't know anything about the authenticity or the
5 author and sending it to you after you have already been
6 told these things, which perhaps as the fact-finder in this
7 case you should not have been told, I think raises some
8 serious issues that I would like some time and opportunity
9 to think about.
10 You mentioned the question, like, what would be
11 the -- what would be the relief or whatever that might be
12 needed. I don't know what that is, Your Honor. But I don't
13 know enough right now to even know whether an adjournment
14 would be appropriate.
15 Like I said, I haven't seen the letter. I
16 don't know anything about this letter. But it -- I will say
17 without, you know -- and I don't want to -- I'm not playing
18 games here. I am deeply troubled by this information being
19 provided under those circumstances with me not being advised
20 in advance to the fact-finder in the course of a trial.
21 THE COURT: Okay. Well, a couple things.
22 I do want to hear in a minute from Mr. Getty why
23 he refused, evidently, your request to have a heads-up as to
24 what the purpose of the sidebar was.
25 My goal or instinctive thought that Mr. Getty

11

sealed and confidential

1 should share the letter was principally for your benefit and
2 not for mine. And, frankly, let's say I'm amending what I
3 said.
4 Eventually I do think, which eventually could
5 be post-trial, but eventually the letter needs to get in
6 the record, not necessarily the official trial record, but
7 needs to be to be in our docket somewhere given that this
8 sidebar is occurring and won't make any sense ultimately to
9 anybody who reviews this record if they don't get to see
10 the letter.
11 But my principal goal right now is, I do think,
12 Mr. Lucas, you should have a chance to see the letter just
13 as soon as you want to see it. I'm prepared to take at
14 least a short recess if that is necessary in order for you
15 to get it and look at it.
16 But at this point, I have a trial and presumably
17 everybody is ready for a trial, and you all took whatever
18 discovery you took. I'm confident that I will not be
19 improperly tainted in any way by what has occurred in this
20 sidebar, and so far no one has asked me to do anything.
21 And so I'm prepared to proceed with trial and
22 you will all, you know, presumably have a chance to ask me
23 to do whatever you want me to do after you've had more time
24 to think about this new development.
25 So absent any specific request, we're going to

12

sealed and confidential

1 move forward.
2 MR. LUCAS: Well, Your Honor, I -- excuse me. I
3 didn't mean to cut you off. I apologize.
4 THE COURT: No, I was done. Go ahead.
5 MR. LUCAS: I have a specific interim request.
6 No. 1, yes, I would like to see the document.
7 Yes, I would like to have the opportunity to
8 consider it.
9 And then I would like to have the opportunity
10 to consider whether I want to make any further requests to
11 the Court after having the chance to take a look at it.
12 I'm not arguing at all, Your Honor, by the
13 way, about whether the document would be placed under seal
14 or something to record what it is. The problem is the
15 entire document has been read at this point in time.
16 And so I would like to -- like I said, I would
17 like to see it, have an opportunity to react to it myself,
18 and then see if I have the specific request to make to the
19 Court or not.
20 And I would ask the Court's indulgence on that.
21 THE COURT: Okay. Well, we'll certainly -- if
22 Ms. Harlan is still on the line, if you have an e-mail or
23 something -- Mr. Lucas, does she know how --
24 MR. LUCAS: Yes, she has my e-mail address, Your
25 Honor.

13

sealed and confidential

1 THE COURT: So I would direct that that be
2 shared with Mr. Lucas just as soon as possible, probably
3 while we're talking.
4 MS. HARLAN: I'll send it right now, Your
5 Honor.
6 THE COURT: Thank you very much.
7 And so I think soon we'll just take another
8 recess and then I'll ask when you are ready to talk
9 further.
10 MR. GETTY: Your Honor, I guess I owe an apology
11 to Kevin. We've had a really wonderful, professional,
12 highly ethical relationship.
13 I -- you know, I just, I have been so stunned
14 by this that I just thought, let's just get to court and
15 get it out all at once. I mean, in hindsight, I probably
16 should have told him something about it. And for that, I
17 apologize.
18 There was -- you know, I just, I may be a little
19 rattled by this. Even after all the years of practice, I
20 have never experienced anything like this. And I do, I do
21 think that we need to take some time to digest this, and
22 then perhaps Kevin and I can talk, talk before we get back
23 on the record with you. I think we -- I think we both have
24 a duty to investigate this matter, and, you know, I think we
25 really need to talk to each other about what we're going to

### Page 14
*sealed and confidential*

1  do. Because I'm, I'm at a loss.
2      THE COURT: Okay. I'm going to propose that
3  assuming Mr. Lucas has the letter now or gets it
4  momentarily, that we meet again in an hour, at 12:00
5  o'clock.
6      But in the meantime, Mr. Lucas, of course you
7  will want to do whatever you do with the letter, but I do
8  want you both to meet and confer principally with the focus
9  on what is it, if anything, you want me to do now other
10 than have Mr. Lucas call his first witness and move on.
11 And then if there's more you think you need from me, to be
12 prepared to discuss that when we return.
13     Any question about that, Mr. Getty?
14     MR. GETTY: No, Your Honor. I would ask just
15 that -- we're getting some feedback here. I don't know
16 what --
17     THE COURT: Yes, that just started near the end
18 of the last time you talked, at least from my perception.
19 Maybe you can work with your folks a little bit in the next
20 hour and figure out.
21     MR. GETTY: We made our technical person leave
22 the room, but I'll get him to work on it.
23     So if Kevin calls me after he has time to
24 digest this so we can talk before we reconvene, I'd
25 appreciate it.

### Page 15
*sealed and confidential*

1      THE COURT: I'm sure he will do that.
2      Mr. Lucas, any questions?
3      MR. LUCAS: No, just if I could ask this.
4      Is there any possibility after the Court --
5  after we reconnect here, that Mr. Getty and I could stay
6  on this connection so we could talk? I just have a few
7  preliminary questions just to ask him.
8      THE COURT: I believe you can do that, and I --
9  I certainly will be leaving, and I can direct that all of my
10 staff people working with me get off as well.
11     MR. LUCAS: I just think it would be helpful so
12 we don't miss each other. You want us back in an hour, so I
13 would like just a few preliminary questions.
14     MR. GETTY: One other thing, if I could add for
15 the Court's benefit and Kevin's also, I have instructed my
16 secretary to take this and place it, the original, in its
17 sealed envelope and to place it in the vault.
18     THE COURT: Okay.
19     MR. GETTY: So that ...
20     THE COURT: All right. Thank you.
21     So you two stay on. I will be in a recess, and
22 we will meet up with you again at noon.
23     MR. LUCAS: Thank you, Your Honor.
24     MR. GETTY: Thank you.
25     THE COURT: Thank you.

### Page 16
*sealed and confidential*

1      (Lunch recess taken.)
2      * * *
3      Afternoon Proceedings, 12:07 p.m.
4      MR. HEIM: Hello, Your Honor. Should we go
5  straight to the breakout room?
6      THE COURT: Yes. Let's go to the sidebar.
7  Thank you.
8      (Sidebar conference continued.)
9      MR. HEIM: You have a popup on your screen.
10 Click on that.
11     THE COURT: Okay. Can you all hear me?
12     MR. LUCAS: Yes, Your Honor.
13     MR. GETTY: Yes, Your Honor.
14     THE COURT: All right. I believe that we are in
15 the sidebar.
16     Mr. Gaffigan, court reporter, you're there.
17 Correct?
18     THE COURT REPORTER: Yes, Your Honor.
19     THE COURT: Okay. Marco, you're welcome to stay
20 with us, make sure that this technically goes well.
21     All right. Let me start with Mr. Lucas. I
22 trust you received and reviewed the letter. Can you confirm
23 that and let me know what your position is as to what, if
24 anything, I need to do at this point.
25     MR. LUCAS: Your Honor, I have received the

### Page 17
*sealed and confidential*

1  letter and the photocopy of the letter and photocopy of the
2  face of the envelope. I have received that.
3      I feel like I'm in a really -- I just want to
4  be straightforward about this, in a really awkward and
5  difficult position at this point in terms of an ability to
6  consider the implications, the strategic implications of
7  this and to provide my client with the best representation I
8  can under the circumstances. If I could explain that a
9  little bit, Your Honor, so you just understand where I'm
10 coming from.
11     I have a client basically that thinks this is a
12 ploy and that we should just move forward, and I feel I have
13 an obligation, and I don't want to send, and certainly it's
14 not fair and it would not be appropriate, send some sort of
15 signal that somehow this causes the plaintiffs to pull back
16 in any way, shape or form, but as counsel, I really would
17 like to consider the strategic implications of this, and I
18 really don't feel that I've had an opportunity to do this.
19 Had this issue come up in the context of a private
20 discussion between counsel where we could deal with this in
21 advance, that's one thing, and I certainly appreciate Your
22 Honor's comment. I genuinely we do. You said before, you
23 know, you can -- I can't remember your exact language, Your
24 Honor, but you could put things like this aside.
25     But it seemed to me for me personally, it would

## Page 18

*sealed and confidential*

1 take some time to kind of consider the implications, the
2 trial implications, all right, because not this idea oh, no,
3 something is terrible here, but consider those type of
4 things.
5 　　　　　The letter itself addresses all three of my
6 witnesses, so it's not just the letter. It does that. As
7 I said, the client itself wants to go forward and believes
8 that if they don't, that somehow circumstances would suggest
9 that there's some credibility or some validity or that the
10 letter is authentic and comes from someone who it purports
11 to come from. That's a real difficult situation to be in,
12 Your Honor.
13 　　　　　THE COURT: All right. We lost one -- I
14 don't mean by lost, but I no longer can see your client,
15 Mr. Garfinkel.
16 　　　　　You were still there, Mr. Garfinkel; correct?
17 　　　　　MR. GARFINKEL: That is correct.
18 　　　　　THE COURT: Okay. Fine. I'm sorry about that,
19 Mr. Lucas.
20 　　　　　So where does that leave you? Are you making
21 any particular request?
22 　　　　　MR. LUCAS: At this point, no. I mean, I need
23 to, I need to talk with my client and see what they're
24 comfortable with doing. I've talked with them, tried to
25 explain the situation. I've indicated to you what their

## Page 19

*sealed and confidential*

1 view is. But I said at least at this point in time, I would
2 like some additional time to consider this. Certainly doing
3 that in a way, sending the clear statement that this is not
4 any kind of an indication from me or the client that there's
5 any credibility to this at all.
6 　　　　　In fact, the circumstances would suggest just
7 the opposite on the morning of trial all of a sudden this
8 arise. But by the same token, like I said, I would like
9 to have time to digest this a little bit, consider
10 alternatives, and I don't know what alternatives, if any,
11 the Court is willing to consider so I could kind of discuss
12 that with the client and see if I can get on the same page
13 with the client and feel comfortable that I'm representing
14 the client appropriately under the circumstances.
15 　　　　　THE COURT: Are you in a position to propose
16 any alternative without committing yourself, but are there a
17 menu of things that you are thinking you could conceivably
18 be asking?
19 　　　　　MR. LUCAS: Well, number one, anything from an
20 adjournment to a date certain down the road, and I realize
21 that's not what we want. This case has been postponed
22 twice. Believe me, that's not what we want. We wanted to
23 go forward, but that would be the one idea. You know, on
24 the other extreme would be at least like an hour or more to
25 think about it, but I don't know what will be at the end of

## Page 20

*sealed and confidential*

1 that.
2 　　　　　I've spent the last hour running around, getting
3 the letter, getting the client, talking about the options,
4 and Mr. Getty and I did have a moment to briefly discuss the
5 alternatives, but I really don't. And I know that's not an
6 adequate response for Your Honor, believe me. I want to be
7 responsive to you, but, like I said, I'm concerned about
8 sending a wrong signal, a signal that would be not justified
9 under the circumstances to anyone, but now I have a
10 situation with a record and not just with you, Your Honor.
11 I have a potential appellate record down the road.
12 　　　　　There are things on this record should not be on
13 this record. It should never have come up the way it came
14 up, and I don't mean that, and Mr. Getty has told me that
15 he -- he told you that, you know, he was taken by surprise.
16 So I'm not suggesting something other than that along those
17 lines, but it's there. It's now there. It's in my mind a
18 serious matter for counsel to be figuring out how he best
19 represents his client.
20 　　　　　I wish I could do better. I've been doing this
21 for 42 years, Your Honor. I'm sure you're sick of hearing
22 from people that have been practicing too long. But the
23 fact of the matter is it is troubling to me, and I want you
24 to know, I want Mr. Getty to know, I want Mr. Sensing,
25 everyone that is on this phone, to know this is not in any

## Page 21

*sealed and confidential*

1 way, shape or form any kind of view that the client did
2 anything wrong here. Just the opposite. They want to go
3 forward because they want to go forward and they don't want
4 there to even be the possibility that somebody thinks that
5 this could be a genuine communication.
6 　　　　　Well, that still is an awkward position to try a
7 case in, Your Honor, when your three witnesses are back to
8 back to back all mentioned in this letter.
9 　　　　　THE COURT: All right. Mr. Getty, you may
10 have something you want to say. From my perspective,
11 Mr. Lucas has not made a specific request at this point,
12 but perhaps may need a little more time to think about
13 things. But is there anything you want to say or request
14 at this point?
15 　　　　　MR. GETTY: Yes, Your Honor. I concur with
16 Mr. Lucas, that we are all in a quandary here and we really
17 need some time to sort through this. You know, I think
18 we need, I think we need to at least have an adjournment
19 perhaps for the afternoon so we can sort of sort through
20 this.
21 　　　　　You know, both sides need to give careful
22 consideration as to what the next steps are. Ultimately, I
23 think there needs to be some sort of brief adjournment to
24 sort through some of these issues. What I would propose
25 right now today at this moment is that we adjourn and

## 22
sealed and confidential

1 reconvene in the morning and perhaps report to the Court by
2 letter this evening.  The Court can set a time if they would
3 like, maybe 6:00 o'clock this evening or 5:00 o'clock as to
4 what our thoughts are on, you know, how we should proceed,
5 if at all.
6          You know, one of my concerns is that there are
7 allegations about SGS being in some sort of conspiracy with
8 Mr. Thrasher, and also referenced the Standard Labs.  Well,
9 we never deposed SGS, never had the opportunity.  You know,
10 I'm sitting here saying, you know, do I now have to put some
11 additional questions, you know, before we reconvene to Mr.
12 Taylor about, you know, these allegations.  I mean, I'm
13 just -- and I've got to be honest with you.  I want to talk
14 to criminal counsel about the implications of what we're,
15 what we're facing.
16          But right now I think, I think we really need
17 to maybe adjourn for the remainder of the day, give Kevin
18 and I time to consult with others and come up with either a
19 mutual proposal or, you know, proposals as to what we should
20 do.
21          But I'm not going to, you know, hold back.  At
22 this point I'm thinking that there has to be some sort of
23 brief adjournment beyond today in order to maybe address
24 some of these issues about a conspiracy between, you know,
25 SGS and Mr. Taylor and Mr. Thrasher.

## 23
sealed and confidential

1          And I've got to be frank, Your Honor.  You heard
2 my opening this morning.  You know, given our history of
3 dealings with Mr. Thrasher, we take this even more seriously
4 under the circumstances.  I mean, the things that are said
5 in that letter sort of, you know, add flesh to, you know,
6 what we've been saying we've been subjected to and what we
7 suspected all along.
8          MR. LUCAS:  That's the problem.  I'm sorry.
9          THE COURT:  I will get back to Mr. Lucas.
10          MR. LUCAS:  I'm sorry, Your Honor.
11          MR. GETTY:  So, you know, as I say, you know,
12 I'm sure no one in this courtroom would envy the position
13 that this whole situation has put Mr. Lucas and myself in.
14 We just need, we just need some time to work through this
15 and come up with a concrete suggestion to the Court as to
16 how we move forward.
17          THE COURT:  Mr. Getty, you know, you just
18 alluded -- of course, I did hear the opening statements.  I
19 believe you had said that you had seen and read the letter
20 before the opening.  If that's true, I have been wondering
21 over the last hour, why didn't you bring this up before
22 opening statement?
23          MR. GETTY:  In hindsight, Your Honor, perhaps
24 I should have.  I was so rattled by the whole thing, I
25 literally saw it -- I literally saw it, you know, ten

## 24
sealed and confidential

1 minutes before the openings were set to start and, you know,
2 in hindsight, perhaps I should have.  I wanted to sort of
3 try and digest it, think about it, and that was the decision
4 I made.  If it was a wrong decision, it was my decision
5 and, you know, I stand on it and I apologize for it, but
6 that's the way this -- that's the way it happened.  And,
7 you know --
8          THE COURT:  And when is the first you heard of
9 this letter?
10          MR. GETTY:  This morning when I walked in here
11 shortly before the proceedings were to begin.
12          THE COURT:  Is that the ten minutes before or
13 had you heard about it before then?
14          MR. GETTY:  I hadn't seen it until ten minutes
15 before.
16          THE COURT:  But when did you walk in and first
17 hear of it?
18          MR. GETTY:  I got here not much sooner than
19 that, Your Honor.  I was late this morning because of my
20 back.
21          THE COURT:  And you did not have a chance to
22 look at the letter between whenever you walked in and heard
23 about it?
24          MR. GETTY:  I read it before we went on the
25 record.

## 25
sealed and confidential

1          THE COURT:  About ten minutes before you say?
2          MR. GETTY:  Yes.  Yes, sir.
3          THE COURT:  All right.  Mr. Lucas, go ahead and
4 say what you want to say.
5          MR. LUCAS:  I just feel like I have to say.
6 You know what I'm going to say, Your Honor.  When a
7 statement is made like in light of the Justice history
8 with Mr. Thrasher, you could understand why they're more
9 concerned.  Well, clearly, in light of Mr. Thrasher's
10 experience with the other side, he feels pretty confident
11 as to what the source of this letter is and it's not
12 authentic and that it doesn't come from somebody it purports
13 to come from, and all the circumstances are unbelievably
14 coincidental, which would support that, including it
15 arriving on the day of trial.
16          Now, again, I don't want to do that, but I
17 think -- I mean, I have said it because it's true.  That's
18 the concern.  But that's why this stick is so pointed.  The
19 point is sharp.  You have a situation where both sides have
20 made accusations and talking about distrust of each other
21 and so it just becomes difficult.  That's all I'm saying,
22 Your Honor.
23          If Mr. Getty is purporting to say that this is
24 a genuine letter from someone who knows something and the
25 statements are true, well, then, you know, certainly, from

26

*sealed and confidential*

1  the Xcoal point of view is, this looks like it's a total
2  setup by people that are trying to falsely attribute things
3  to Mr. Thrasher which are not true.
4          But like I said, that just heightens, it
5  heightens the sensitivity issue and the reason at least in
6  my case why it's difficult for me to have sorted through and
7  digested this in a way that I feel that I adequately kind
8  of am apprised and can represent the client effectively.
9          THE COURT: All right. Thank you.
10         Let me say a few things. I think at this point
11 I have essentially a joint request for an adjournment for
12 the rest of the day, and I am going to grant a joint request
13 for a continuance until tomorrow morning. That's as far as
14 I'm granting at this point.
15         And I am directing that you all spend the
16 afternoon obviously thinking about what you think the impact
17 of this letter, if any, is on how this case should now
18 proceed, including making time to meet and confer with one
19 another, because I am also ordering that a joint letter be
20 submitted at 6:00 p.m. tonight telling me, you know, your
21 updated positions.
22         If you determine you need a few more hours than
23 that, let me know. We'll give you more time, but I do want
24 the benefit of what your revised thoughts are by sometime
25 tonight so I can begin to think about overnight what I think

27

*sealed and confidential*

1  might need to happen.
2          Nobody has necessarily said this as an option.
3  I do think one option here is that this letter is just
4  simply too late to have any impact on this trial and that I
5  strike it for all purposes. You know, it's not to be used.
6  You know, discovery is closed and we all go forward, and I
7  assure you I am very capable of ignoring and probably in
8  time even forgetting this letter.
9          I'm not yet at a point where I am imposing that
10 on you, but that is an option that I do want you to think
11 about and will want your position.
12         You know, I think another option may be that we
13 go forward tomorrow and the letter is used, you know, for
14 presumably cross-examination and I factor it in with all the
15 other evidence and we move forward.
16         If one or both sides determines that they want
17 to ask about reopening discovery, my guess is that if you
18 persuade me of that, that's going to push things back
19 quite some time, and I imagine that discovery would not be
20 a limited exercise.
21         I am troubled, if not suspicious, by the
22 circumstances and timing with which this letter has arisen,
23 and if we go down the path of reopening discovery to try to
24 figure out, you know, what merit, if any, there is to this
25 letter, we may well have to further explore the timing and

28

*sealed and confidential*

1  the circumstances with which this letter came into
2  defendants' possession and when it was raised with plaintiff
3  and with the Court. So my guess is if we open this up,
4  we're going to be opening up a lot and we're going to spend
5  a lot of time on that.
6          That's not meant to say I won't rule all of
7  that out. You all are in a difficult position. I'm in a
8  difficult position. I'm ready for this trial. You know
9  from the decisions I've issued, I want to go forward with
10 this trial. We've got everything technically set up. I'm
11 sure your witnesses are all prepped and ready to go. I've
12 devoted resources to it. Those resources are not unlimited.
13 I have a law clerk who is going to leave at a certain point.
14         All of that said, I'm giving you the afternoon
15 and part of the evening if you need it to talk to your
16 client, talk to one another, and to get back to me with
17 your positions as to where you are and then we'll meet
18 tomorrow at 9:00 o'clock and figure out where to go from
19 there.
20         Mr. Lucas, anything else you want to say?
21         MR. LUCAS: No. Thank you, Your Honor.
22         THE COURT: Okay. And Mr. Getty?
23         MR. GETTY: I just want to add that if there's
24 any suggestion that the Justices are behind this letter, I
25 have to take some offense at that. I would be -- I would

29

*sealed and confidential*

1  never take part in that. I have no knowledge of anything
2  along those lines. I believe it to be legitimate.
3          I guess the most unfortunate thing is if,
4  after all the trial work and getting, you know -- being in a
5  position to be fully ready to try this case, and as hard as
6  my secretary and everyone else worked, I guess I wish I had
7  not suggested that my secretary take yesterday off. Because
8  the letter came to the office yesterday. She didn't, you
9  know, didn't locate it, you know, open it, and, you know,
10 get it down here to us until this morning.
11         And, you know, if I had had it yesterday,
12 that we'd have probably, you know, handled it a little
13 differently. You know, I -- you know, you do the best you
14 can under the circumstances that confront you, and I have
15 never been confronted with anything like this in my entire
16 career, and neither had Kevin Lucas.
17         I do think that, you know, there are all kinds
18 of problems here. We've all prepared for the trial. But I,
19 you know, I think the interest of justice requires us to
20 really give serious, thorough consideration to how we handle
21 this.
22         THE COURT: Well, you are going to have the
23 afternoon, at least, to start thinking about that.
24         I do want to go back into open court just to
25 announce that we're going to adjourn for the day and that

```
 1   we'll reconvene at 9:00 o'clock tomorrow morning.
 2           So, Marco, do we need to do something or do
 3   you take us back?
 4           You're on mute.
 5           MR. LUCAS:  I cannot hear you.
 6           THE COURT:  Yes.
 7           MR. HEIM:  I can take us all back.  It will
 8   take 30 seconds, or if you would like to go back yourself,
 9   there is a leave room button at the bottom of the screen,
10   if you press that, it will bring you right out.
11           I'll initiate the move as well.
12           THE COURT:  Okay.  Thank you.
13           (Virtual sidebar conference ends.)
14
15      I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.
16

17                  /s/ Brian P. Gaffigan
                   Official Court Reporter
18                  U.S. District Court
19
20
21
22
23
24
25
```