# Attachment B

[SEALED]

100

```
                     IN THE UNITED STATES DISTRICT COURT

                     IN AND FOR THE DISTRICT OF DELAWARE

                                  - - -
    XCOAL ENERGY & RESOURCES,              :   CIVIL ACTION
                                           :
              Plaintiff,                   :
    v                                      :
                                           :
    BLUESTONE ENERGY SALES CORPORATION,    :
    SOUTHERN COAL CORPORATION, and         :
    JAMES G. JUSTICE, II,                  :   NO. 18-819-LPS

              Defendants.
                                  - - -

                          Wilmington, Delaware
                       Wednesday, August 26, 2020
                         Bench Trial - Volume B

                                  - - -

    BEFORE:       HONORABLE LEONARD P. STARK, Chief Judge

                                  - - -
     APPEARANCES:


                  BUCHANAN INGERSOLL & ROONEY, PC
                  BY:  GEOFFREY G. GRIVNER, ESQ.

                     and

                  BUCHANAN INGERSOLL & ROONEY, PC
                  BY:  KEVIN P. LUCAS, ESQ., and
                       DANIEL C. GARFINKEL, ESQ.
                       (Pittsburgh, Pennsylvania)

                            Counsel for Plaintiff



    Valerie J. Gunning                 Brian P. Gaffigan
    Official Court Reporter            Official Court Reporter
```

101

APPEARANCES: (Continued)

    POTTER ANDERSON & CORROON, LLP
    BY: JOHN A. SENSING, ESQ.

      and

    THE GETTY LAW GROUP, PLLC
    BY: RICHARD A. GETTY, ESQ., and
        DANIELLE HARLAN, ESQ.
      (Lexington, Kentucky)

      and

    McGUIRE WOODS, LLP
    BY: GEORGE TERWILLIGER, ESQ.
      (Washington, District of Columbia)

      Counsel for Defendants

- oOo -

P R O C E E D I N G S

(REPORTER'S NOTE: Side bar conference. The following portion ordered sealed by the Court, contained herein.)

102

    MR. SENSING: Marco, I'm not sure if everybody is getting a message saying that the breakout room will close in 30 seconds.

    No?

    MR. LUCAS: Yes, I am.

    MS. HARLAN: I got the same message.

    MR. GARFINKEL: This is Dan. I have the same message as well.

    MR. SENSING: I don't think Marco is here to save us either.

    MS. HARLAN: Kevin is in the courtroom speaking with Marco right now.

    (Virtual sidebar conference ends.)

    * * *

    (Virtual sidebar conference.)

    THE COURT: Okay. My screen says I'm now in a breakout room. And I can see Mr. Getty and Mr. Lucas. And here comes Marco.

    Are the folks who are supposed to be in the sidebar and only those folks in there?

    Marco, can you confirm that?

    MR. HEIM: Correct. I confirm that.

    THE COURT: Okay. And Brian, good morning. You are there; right?

    THE COURT REPORTER: Good morning, Your Honor.

103

Yes, I'm there.

    THE COURT: Good morning, Brian. Okay.

    Is Mr. Sensing in? Mr. Sensing?

    MR. HEIM: He is still joining.

    Here he comes.

    THE COURT: Marco, are we still waiting for Mr. Sensing?

    Marco?

    I'm guessing that Marco stepped out to go find Mr. Sensing because I don't see either of them listed here so we'll wait.

    MS. HARLAN: John has advised Rich on a cellphone call that he is having technical issues, but he's trying to resolve them.

    THE COURT: Thank you for that. We'll give them a few moments.

    MR. TERWILLIGER: Judge, while we're waiting -- this is George Terwilliger. I just wanted to thank you for allowing me to appear on very short notice on this matter. I appreciate it.

    THE COURT: Good morning and welcome. And I'm glad your computer seems to be working just fine.

    MR. TERWILLIGER: Thank you. Thank you, Judge.

    MR. SENSING: Good morning, Your Honor. This is John Sensing. I understand that -- I got kicked out of the

104

breakout room, and I think folks may have been waiting for me to get back so I wanted to let you know I'm back.

    THE COURT: We were, and I'm glad that you are back. And so I now think everyone who needs to be here and only everyone who needs to be here is here.

    So with that, Mr. Lucas, you may proceed.

    MR. LUCAS: Your Honor, thank you. Thank you very much.

    If I could indicate, address upfront, again, before I get into substance, comments made this morning concerning the letter of last evening.

    And I will tell you, and I'm sure we will hear it again, I have been accused this morning of sharp practice in fairly vocal terms, and I'm fully prepared to address any of the questions or the issues that the other counsel or the Court has.

    Your Honor, you also mentioned in your opening comments that the letter last night says that the plaintiff joins in the request as opposed to does not oppose.

    That is, in fact, true. In fact, I changed it from does not oppose to join because in a recent similar situation, we filed a do not oppose, and you had us re-file something that said that is not a position.

    So I'm doing the best -- believe me, I'm doing the best I can in a difficult situation, and it's not my

105

intention to get a leg up on anyone here.

What happened was last night we were working -- the reason why you got the letter, I guess, at 8:53, is that counsel were in discussions back and forth on these circumstances. And I was trying to further assess going into those calls, you know, what my position and situation really is.

And so the end result I put in the letter last night, and counsel agreed to put in the letter, with great reluctance the plaintiff joins in the defendants' request, which request raises ethical issues of counsel with respect to nonparty witnesses that will require additional time to address.

And I realize that is cryptic. And I thought you might, you know, be scratching your head what exactly am I saying. Because I'm trying to be careful here, Your Honor. These are nonparties that are involved, the allegations are serious. The source of the allegations are highly suspect and unauthenticated. And as I said, I'm trying to balance a number of considerations here.

I'm going to be calling witnesses. As you mentioned yesterday, the next two witnesses are two people -- I mean, after Mr. Thrasher, if the trial goes forward at this time, that are named in the letter of yesterday. They're nonparties. And also the other two

106

parties are companies that are named in the letter could become witnesses or rebuttal witnesses down the road. SGS was already named on our witness list, and I had told Mr. Getty when he and I discussed and exchanged who each side was likely to call, you know, as opposed to who they listed as potential witnesses that we may very well call them in rebuttal.

So, No. 1, I just want the Court to realize and opposing counsel to realize that at least from my point of view, I'm trying to deal with a difficult situation as best I'm able. And the problem here with the nonparty witnesses, Your Honor, is I don't represent these people. I can't advise them. I'm operating under a sequestration order which I'm trying to be extremely careful about.

And so I'm not really in a position at this point, or at least haven't felt to be in a position, to be able to address these matters with those witnesses, and perhaps they would want counsel of their own separate, as I said, I'm not their counsel and that type of thing.

And so these issues are real. That is what I was attempting to address and at least to alert the Court.

I want back last night, I got some sleep, not a good night, but I got some sleep last night, and I had a chance to think a little bit more about what we talked about yesterday. I had a chance to look over portions of the

107

transcript, including some comments that Your Honor had made, and I will tell you, I came away with the impression that, at least my view going in, is that the Court would not necessarily follow whatever the parties might suggest. The Court might have other alternatives. I think you had suggested yesterday some options that, you know, you thought people might make, there might be other options.

And so I thought more about that. And, frankly, one of the things I focused on was in light of my considerations, that this is a nonjury trial; and, therefore, the Court has a lot of -- more control over sequencing and conducting a trial than we would if this was a jury trial, a lot more practical capabilities.

So my thought was this, Your Honor, in, you know, in a big sense, is that was perhaps for consideration hold the motion to adjourn in abeyance, just hold it in abeyance, and you can decide it whenever, whenever you think it appropriate in the next several days presumably, but hold it in abeyance.

That would be No. 1.

In yesterday's conference, you had laid out on page 82 one potential option. I call it the Option No. 1 just because it came first on page 82, but this idea is, well, maybe we go forward and just without the letter. The letter is not in the record, just go forward as if it never

108

happened, and we'll have the trial that way.

So that was an option. Clearly you weren't saying that was what you were going to do, but that was an option.

And so I thought, thinking about this, in those circumstances and the concern about third-party witnesses and the Court's comments about wanting to, you know -- having prepared for the trial and wanting to make good use of the time set aside, would it be something that the Court would want to consider, and maybe all parties consider, both the Court would want to consider, holding the motion to adjourn in abeyance and going forward with the case as indicated but with the nonparties not testifying at this time.

So with the parties testifying, going forward with the testimony, if the Court feels that is an option that the Court would prefer, or if that just is the option that makes most sense at this point. That would give us the time and the ability, Your Honor, No. 1, for all of us to go forward and have more information when the time -- you know, a decision is made.

In the meantime, we can consider what needs to be done. "We," I mean everyone in terms of the sequestration order as well, in terms of advising the nonparties of what has happened.

I mean, I'm in the situation, Your Honor, that

109

1  if the trial goes forward today, for example, Mr. -- you
2  know, my client, Mr. Thrasher, is a party and so I represent
3  him. I feel we can make decisions, informed decisions on
4  his behalf, or he can make them represented by counsel. But
5  Mr. Taylor, you know, Mr. Payne, and then possibly SGS or
6  Standard Labs, to the extent that they would become now
7  relevant or want to be called, these would all be people we
8  don't represent.
9             And so I would need to know, I would think, that I
10 can disclose to these people what they need to know so they
11 can make an informed decision as to whether or not to testify.
12            My big concern, Your Honor, just my big concern
13 was if you decided to go forward, if you decided on whatever
14 basis you wanted to go forward with testimony, if I have to
15 go forward with calling or not calling a nonparty witness in
16 this case, it is a very, very uncomfortable position.
17            And I hope Your Honor shares my view. I mean,
18 I'm not a criminal lawyer, my background and whatnot, it's
19 an issue where I would be calling these people as witnesses,
20 the extent to which I can make disclosures to them is
21 uncertain at this point, particularly with the sequestration
22 order.
23            They're not aware of, at least from me, this
24 letter at this point in time, and they may want to, you
25 know, make some decisions or consult counsel of their own

110

1  choosing to make that decision.
2             So that was the reason, that was the reasoning
3  on which, when last evening when we talked with defendants'
4  counsel, that we decided to join in the motion, you know,
5  with reluctance. But it was that -- and that's what my
6  language is intended to reflect and kind of alert you to
7  these nonparty considerations.
8             But what I -- like I said, what I was most
9  concerned about when I thought about it overnight is that
10 if Your Honor decided, well, I hear the parties' position
11 but I want to go forward, I'm in an impossible position,
12 Your Honor, as far as I'm concerned, and an unfair position
13 to these nonparties to be in a position to call them as
14 witnesses, you know. Or for me to even talk to them further
15 about these matters, just to call them as a witness period,
16 but they're an uninformed, unrepresented witness, to make a
17 determination as to whether or not they want to -- whether
18 they want to testify under these circumstances.
19            And so that's it. It's not intended, Your
20 Honor. Believe me, it's not intended to be sharp practice.
21            I could understand, you know, why counsel would
22 say, I thought we had a deal last night. As I said to them
23 last night and I repeated to them this morning, at least
24 it was my understanding yesterday that even if we had a
25 deal, it doesn't mean it was a deal that Your Honor would be

111

1  agreeable to. I mean, you may, you may not. But it's not
2  something that I thought that, you know, that was -- it was
3  a done deal if that were the case.
4             So it's not my intention. If there is some
5  potential prejudice to any of the plaintiff's counsel in
6  terms of the testimony going forward today and they were
7  somehow anticipating it wouldn't go forward today, I'm
8  flexible, obviously. I mean, you know, if it goes forward
9  tomorrow or something if the Judge wants to -- Your Honor
10 wants to pursue this alternative.
11            I mean, it's not my intention to snooker anyone.
12 Please accept that representation.
13            And the other thing that we talked about last
14 night, and it's in the letter, I'm fully in favor of -- in
15 fact, you know, we had raised the issue -- about forensic
16 preservation with respect to the letter in question.
17            I mean, so that's really the background, Your
18 Honor, but I thought that I needed to raise this to you
19 first because if you came back to me later and said, well,
20 wait a minute, after you decided how you were going to rule
21 and ask me why I didn't tell you sooner, and obviously
22 particularly in light of the incident kind of we had
23 yesterday, I wanted to make sure plaintiff's counsel were
24 aware of what I had thought, and, you know -- I mean, I
25 talked to the client this morning, very early, at 7:15 or

112

1  thereabouts. I tried to set up a conference call for 8:00
2  o'clock. Obviously they weren't expecting it so we had the
3  call a little bit later.
4             I told them what this proposal was going to be,
5  so they would have the opportunity. So like I said, I put
6  that out for the Court's consideration, and obviously I'm
7  more than happy to answer any questions that the Court might
8  have.
9             Thank you, Your Honor.
10            THE COURT: Thank you. I do have a few before
11 we turn it over to defendants.
12            The ethical issues referred to in the letter and
13 then again this morning, you don't have any ethical issues
14 with respect to your client, that is you are fully prepared
15 to proceed with respect to the party witnesses and, in
16 particular, your own client. Is that correct?
17            MR. LUCAS: I would like -- yes. Under the
18 option, what I called the number one option, the Court would
19 always have the ability to have Mr. Thrasher come back in
20 and testify at a later time, but, yes, if we're going to go
21 forward as if we were going to go forward the day before
22 yesterday, then, you know, Mr. Thrasher can make and Xcoal
23 can make that determination, and we represent Xcoal. So,
24 yes, I feel comfortable we can make that informed
25 determination, or he can make that decision on an informed

113

1  basis.
2  THE COURT: I would not have thought that the
3  sequestration order precluded anyone from providing this
4  letter to witnesses, to non-party witnesses. I would have
5  thought the sequestration order, you know, limited access to
6  the trial proceeding. Whether or not that is what the order
7  would literally say at this point, do you have any objection
8  to me making it clear that this letter can be shared with
9  all witnesses, including non-parties, and then they can make
10 their own determinations as to whether they need to retain
11 counsel or not?
12 MR. LUCAS: No, Your Honor. I mean, if I
13 overly, overly read the extent of the sequestration order
14 under the circumstances, I tried to proceed in a precautious
15 manner, but certainly, I do not have a problem that these
16 witnesses could be made aware of the letter and then they
17 have a period of time and they're going to have to at least
18 decide whether they want to, you know, retain counsel and
19 get separate opinions.
20 So that, it seems to me, the trial for this
21 week, at least in my mind would have to be, would have to be
22 postponed or adjourned, but, like I said, no. If the Court
23 tells me that I have to, makes clear that I have the
24 ability to do that, then I have no objection, Your Honor.
25 The letter is there. It has been filed with the Court.

114

1  Mr. Getty had indicated he thinks that he may have some
2  obligations to submit it to, you know, authorities. I think
3  those are all relevant matters that any kind of non-party
4  witness would want to know about. So I would welcome that
5  kind of clarification.
6  THE COURT: And does Mr. Thrasher know of the
7  letter and is he prepared to testify as early as today?
8  MR. LUCAS: Mr. Thrasher is aware of the letter.
9  He is prepared to testify earlier today under the number one
10 option, Your Honor. Again, if there's something different.
11 But his option that that letter is not going to be part of
12 the examination, cross-examination.
13 THE COURT: But he's not prepared, or at
14 least it would not be your preference to go forward with
15 Thrasher's testimony if I were to permit the letter to be
16 used as part of that examination?
17 MR. LUCAS: I would say it's certainly not
18 my preference, Your Honor. On the, on the other question,
19 I would have to get clarification from Mr. Thrasher on
20 that.
21 THE COURT: Okay. All right. Thank you.
22 Mr. Getty, tell me what you would like me to
23 know and particularly how you'd like me to proceed.
24 MR. SENSING: This is John Sensing, Your Honor.
25 Good morning. I was going to handle this argument for the

115

1  defendants if that's acceptable.
2  THE COURT: I did not mean to exclude you.
3  MR. SENSING: Not a problem at all, Your Honor.
4  So as Mr. Lucas said, as of last night at
5  9:00 p.m., Your Honor, we had an agreement to adjourn
6  this trial to engage in discovery on this letter and to
7  really try to get to the bottom of what are some pretty
8  explosive allegations in the letter. And as Mr. Lucas
9  said, originally, he took no position on it and he joined
10 in that request.
11 So our view is that that letter is, it's in
12 agreement of the parties. I view the letter that I
13 submitted last night at 8:53 as akin to a stipulation
14 between the parties, which is binding on the parties,
15 subject, of course, to Your Honor's approval.
16 So now we come in this morning and have a phone
17 call with Mr. Lucas at about 8:30 where we have this new
18 proposal, which is, to be candid, we viewed as a bait and
19 switch, Your Honor. And, you know, the issue here, and what
20 I think is going on, is, and I think Mr. Lucas answered Your
21 Honor's question on this is he wants to avoid Mr. Thrasher
22 having to have anything to do with that letter, and we think
23 we should be able to use that letter with Mr. Thrasher's
24 testimony. We think we need to have discovery on that
25 letter prior to its use.

116

1  And a lot of Mr. Lucas's argument was saying,
2  and I agree with most of this where he says, look. There's
3  a lot of non-party issues involved here, and I think he's
4  exactly right, and I think those are all great reasons for
5  the 45-day discovery adjournment that we proposed in the
6  joint letter last night.
7  But I do want to correct Mr. Lucas to the
8  extent where he was implying that only non-parties are
9  implicated in that letter, because Mr. Thrasher absolutely
10 is implicated in that letter. And it is our position that
11 before Mr. Thrasher testifies, we need to have discovery
12 on that. We need to be able to use that letter, and I
13 understand at some point, we're probably going to have an
14 evidentiary argument about that letter and what we can do
15 with it.
16 But in our view, it is prejudicial to us for
17 Mr. Thrasher to testify today whether or not we can use the
18 letter because there has been no discovery vis-à-vis the
19 letter with the third parties, with others. And that was
20 what Xcoal agreed to last night and that's an agreement that
21 we think Your Honor should enforce this morning.
22 THE COURT: All right. Mr. Sensing, what would
23 be your position on a middle ground, where, you know, we
24 adjourn essentially for today -- well, first answer this.
25 Any objection to the letter being shared with the non-party

117

witnesses?

MR. SENSING: No, I don't think I have an objection to that. I mean, I think in discovery, you know, I had envisioned in the discovery procedure, it was going to get shared with those non-parties at some point anyway, so, I mean, subject to working out the parameters of that, I'm sure we can. I don't have an issue.

THE COURT: So if I had a short adjournment and direct that somebody share that letter with their, you know, with all witnesses, you know, non-parties as well as parties, and that those witnesses somehow make known to you all fairly expeditiously whether they need time to retain counsel or whether they are comfortable going forward and testifying and, you know, we wait a day or two, something like that, and see if anybody has any concerns in addition to what has been expressed by the parties, and then I assess based on what that looks like whether I need a longer adjournment.

I recognize you have a request for discovery and you believe you have good cause for discovery and I need to make a decision on that, but is there anything else I'm not thinking of that would be the decision point, and/or what is your position on maybe I don't need to decide on your good cause showing for discovery in a lengthy adjournment. Maybe I need to take just an interim step and see if my trial is

118

disrupted by, you know, witnesses now wanting to get advice of counsel before they show up and testify.

MR. SENSING: Well, I think -- certainly, I mean, if Your Honor goes that route, I think it certainly makes sense to, you know, so the witnesses aren't walking in and getting ambushed is a little bit strong, but I mean, certainly that makes sense.

But our position would be, I think that would be prejudicial though to my client because we have a situation where there are allegations in the letter that test results have been falsified, and that is, if true, that is something that is going to be extremely meaningful in the course of this trial, and I'm just using this as one example, Your Honor.

And this is something that we need to take discovery on before these folks testify. So I would respectfully oppose that suggestion, and I think, again, we think, my client thinks the agreement the parties reached last night to adjourn things for 45 or so days to take discovery on these issues, we think Your Honor should grant that.

THE COURT: All right. Anything else from your side, Mr. Sensing, at this point?

MR. SENSING: No, nothing at this point unless Mr. Getty wants to weigh in.

119

THE COURT: Mr. Getty?

MR. GETTY: I would just concur with what Mr. Sensing said. I think this puts us at a disadvantage. We thought we had an agreement and we've relied on that.

I was very surprised at the turnaround so late this morning, and I think if we have an agreement, it's essentially in the form of a stipulation, we ought to stick with it. I think that way nobody is prejudiced, we have limited discovery, we come back, and it's an even playing field.

The only other thing I will say is, I may have misunderstood something, but I distinctively recall discussing what witnesses, you know, were not going to testify or what witnesses might come back as a rebuttal. I never understood that SGS was a potential rebuttal witness. In fact, my specific recollection is that Mr. Lucas told me the only rebuttal witness he had was potentially Mr. Payne, who he would call on direct and then after our expert would testify, Mr. Wolf, that he would recall potentially Mr. Payne as a rebuttal witness. I do not recall any reference or discussion to, any discussion about anybody other than Mr. Payne being a rebuttal witness. I will take -- I will take the blame for misunderstanding, but that is my recollection.

THE COURT: All right. Thank you.

120

Mr. Lucas?

MR. LUCAS: Yes. If I may, Your Honor, two points.

Mr. Getty is just incorrect in his last, in his last recollection, because we actually spoke. He raised by name people from SGS about whether or not they might be called and whether we might call them. I was telling him I did not intend to call them in our direct case, but they may be on rebuttal. I'm assuming that's just a faulty recollection on his part.

But the other point I just want to, just want to emphasize. You know, Your Honor mentioned yesterday some of the potential problems or issues that might arise with discovery and how it might expand beyond what was intended and things along those lines. My only point, just to make in a short comment, is we're not asking you to make a ruling on discovery. You could still decide. The motion is held in abeyance is what our proposal is. You could still decide whether or not there should be discovery.

As you saw from the proposal last night, the parties are talking about discovery. We couldn't reach a quick agreement as to what the appropriate scope of discovery would be, and so, I mean, it's not a question of discovery, not of discovery, even under the letter proposal of last evening.

As was indicated there, the whole scope of discovery, it has been talked about, it has not yet been decided, and it may be that the parties can reach agreement if discovery is to go forward or it may be that they can't and have to come to the Court to resolve their differences.

THE COURT: But your position is that there should be some discovery. Right, Mr. Lucas?

MR. LUCAS: No, Your Honor. I mean, I think this is over. I mean, I have a fundamental difference of opinion with defense counsel here. I will just be blunt. I mean, I think this is an effort just to take discovery after the discovery time period that they could have taken before.

This idea that they didn't have this letter is true, presumably, right, but the idea that they didn't, that they didn't challenge the results of various test results in this case were not accurate. Now, whether they thought they were falsified or not accurate, but these issues are issues they certainly could have raised in discovery in this case. I mean, they made a comment yesterday that, you know, about not having access to these things. I mean, they, as I recall, certainly, they could subpoena non-parties, and they received documents from non-parties such as Norfolk Southern. I believe they received, I could be wrong on

this, but I believed they received documents from SGS. I may be wrong, but they conducted discovery and third-party discovery. They just didn't pursue these matters.

So, no. I think discovery is over. I understand their argument, but I think in the reality of things, I think discovery is over, and one of the efforts here is just simply to extend discovery after the otherwise due date to get things, to inquire into subject matters that they could have inquired during the course of, during the course of the prior discovery.

THE COURT: Mr. Lucas, I always appreciate when parties work things out. I still have the discretion to accept or not accept their agreement. But I have to say I see nothing in the letter last night and heard nothing even in your presentation this morning to indicate anything other than that plaintiffs have already agreed that there should be some discovery and that there's just a dispute as to when it takes place and its scope.

Now, again, I have discretion to say, you know, I'm not persuaded that I should reopen discovery by the joint request, but the letter sets out, at least as I've read it, I think a reasonable reading, defendants feel compelled to request a short adjournment. Under this proposal, each side would be permitted to take limited discovery. We're still talking about what that discovery

is. We want five days to make either a joint discovery plan or each party's proposal, and then plaintiff, with great reluctance, join in defendant's request.

Clearly, I guess now it's clear, this is a misunderstanding. You are preserving at least the option to argue ultimately that discovery should not be reopened.

MR. LUCAS: Or the extent to which discovery. Even the letter last night raises that the parties can't -- even if there is discovery, Your Honor, if the parties can't agree as to the extent of discovery, that Your Honor would have to make that determination. I mean, and, again, I can understand your reading. I'm sitting here and listening to you and I can understand your reading of the letter.

THE COURT: You alluded to, you know, that I threw out the option, which is, one, frankly, I'm still considering, that this letter, you know, didn't come in, or, more precisely, it came in at a time that was just too late. Things happen, you know, on the eve of trial or during trial all the time that that, you know, don't become part of the trial. You know, we had a record and the case is being tried on that record.

I would have thought last night was the time to at least make clear you were reserving the right to push me for that position or, better yet, if that was your view, to say, you know, our position after careful thought,

recognizing we only had half a day to think about it, but our position is this letter should be excluded and we should go forward. There is no good cause for discovery. Let's have this trial.

You didn't say that last night, you didn't even say it this morning, but only now, I understand you're, I guess, reserving the right to ultimately take that position.

MR. LUCAS: Well, I think -- again, I'm not trying to play games.

I think the Court has the ultimate discretion on that, and we don't dispute that. And then if the Court decides it's appropriate, the Court would decide it's appropriate and decide the extent to which.

Could the letter have been done better, Your Honor, with more time? I, I take responsibility for that. The letter itself was put together, probably I think Mr. Sensing would agree, maybe in the last 45 minutes before it was being filed and trying to get something to you in a timely manner. And that's really all I can say, Your Honor.

I'm not -- you know, could we have done better? Yes.

Did we do the best that we thought we could under the circumstances to get this information in to you by 9:00 o'clock? I will tell you we did the best that we

125

1  thought we could do at the time.
2            And I'm sorry, I wasn't more careful in that,
3  but what can I say now.
4            THE COURT:  At this point, though, you are
5  not requesting to go forward with this trial if I'm going
6  to allow the letter to be used even with Mr. Thrasher;
7  correct?
8            MR. LUCAS:  That's the clarification, Your
9  Honor, that I told you I would need to get with Mr.
10 Thrasher.  That's the one point that you raised today that
11 I indicated that is something I would have to clarify.
12           THE COURT:  But you certainly are clear on
13 you're not prepared to call your nonparty witnesses,
14 certainly if the letter can be used.  Let's start there.
15 Right?  I understand that.
16           MR. LUCAS:  Yes, Your Honor.  That's correct.
17           THE COURT:  How about if I were to rule the
18 letter is out?  Are you ready to go forward with the
19 nonparty witnesses?
20           MR. LUCAS:  No, Your Honor.  That is better in
21 terms of getting away from the issues, but these issues are
22 so -- I mean, the subject matter in the letter are so, you
23 know, intertwined that I still think the same considerations
24 with respect to the obligations and what's fair to these
25 nonparty witnesses would remain.

126

1            So you're absolutely right with respect to I
2  would not be comfortable under either circumstance to go
3  forward at this time with nonparty witnesses testifying.
4            THE COURT:  All right.
5            Mr. Sensing, anything you want to add?
6            MR. SENSING:  No, Your Honor.  Except, you
7  know, again, we had an agreement, you know, when we were
8  discussing these issues on the phone last night.  It was not
9  a situation of we're not -- we're reserving the right not to
10 agree to any discovery at all.  It was, hey, we're going to
11 talk with the parameters.  We're going to talk about whether
12 it's third party, whether it's party, we'll fight about that
13 another day.
14           But, again, I think this sort of multi-phased
15 situation that Mr. Lucas is proposing is prejudicial to my
16 clients.  As I say, at the end of the day, we are going to
17 want to use that letter, use the discovery related to that
18 letter in our cross-examination of Mr. Thrasher.  And, Your
19 Honor, you know, we are certainly willing, and if Your Honor
20 would want that, we could certainly do -- we could certainly
21 make a supplemental filing on this issue.  I mean, obviously
22 this is something that sort of exploded in front of
23 everybody yesterday morning.
24           If Your Honor thinks it would be helpful, we
25 would be happy to make a supplemental filing in connection

127

1  with our proposal to adjourn in connection, you know,
2  justifying this additional discovery.
3            But if Your Honor thinks that would be helpful,
4  that is certainly something we could do.
5            THE COURT:  Okay.  Thank you.
6            I'm going to need to take a recess and give a
7  little bit of thought to what you have proposed.
8            Let's reconvene at 10:30.  So about 40 minutes
9  from now.
10           Well, let's go back into public court, and I
11 will say that to everyone.
12           So, Marco, if you can take us back, that would
13 be great.
14           MR. HEIM:  Absolutely.  As before, at the bottom
15 right you will see the leave room button, you can click on
16 that.  I'll initiate the breakout.
17           THE COURT:  Thank you.
18           (Virtual sidebar conference ends.)
19
20     I hereby certify the foregoing is a true and accurate
   transcript from my stenographic notes in the proceeding.
21
22                /s/ Brian P. Gaffigan
                  Official Court Reporter
23                  U.S. District Court
24
25