IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| XCOAL ENERGY & RESOURCES, | : |
| Plaintiff / Counterclaim Defendant, | : |
| v. | : C.A. No. 18-819-LPS |
| BLUESTONE ENERGY SALES CORP., SOUTHERN COAL CORP., and JAMES C. JUSTICE II, | : |
| Defendants / Counterclaim Plaintiffs. | : |

## MEMORANDUM ORDER

WHEREAS, this matter proceeded to a non-jury trial before the Court that stretched out across six days in August and September 2020 (D.I. 132-35, 152-55);

WHEREAS, the Court issued its Opinion on March 29, 2021, finding (1) Defendant Bluestone Energy Sales Corporation ("Bluestone") breached the Coal Supply Agreement ("CSA"); (2) Defendants Southern Coal Corporation ("SCC") and James C. Justice II ("Governor Justice") are liable pursuant to the Performance Guarantee Agreement ("Guarantee"); (3) Plaintiff Xcoal Energy & Resources ("Plaintiff" or "Xcoal") did not breach the CSA; (4) Defendants abandoned, or otherwise failed to prove, their fraud claim against Xcoal; and (5) Defendants are liable for $6,814,105.30 in damages (D.I. 162 at 2);

WHEREAS, on April 5, 2021, the parties submitted a joint status report, in which Xcoal indicated its intention to file post-judgment motions for attorneys' fees and costs, and for prejudgment and post-judgment interest (D.I. 164);

WHEREAS, on April 14, 2021, the Court entered a judgment: (1) in favor of Xcoal and against Defendants on Counts I, II, and III of Xcoal's complaint and on Counts I, II, and III of

1

Defendants' counterclaims; (2) in the total amount of $6,814,105.30 in favor of Xcoal and against Bluestone as to Count I of the complaint and in favor of Xcoal and against SCC and Governor Justice as to Count II of the complaint (D.I. 167);

WHEREAS, on April 28, 2021, Xcoal filed a motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2), seeking to recover attorneys' fees and costs (1) under the terms of the Guarantee executed by SCC and Governor Justice; and (2) against all Defendants pursuant to the Court's inherent equitable powers and consistent with the factors set forth in 28 U.S.C. § 1927 (D.I. 168);

WHEREAS, on April 28, 2021, Xcoal also filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), seeking to amend the judgment to include prejudgment and post-judgment interest (D.I. 170);

WHEREAS, while Xcoal's post-judgment motions were being briefed, on May 13, 2021, Defendants filed a motion to stay the execution of judgment, seeking to extend the automatic 30-day stay of judgment under Federal Rule of Civil Procedure 62(a) until 14 days after the Court rules on Xcoal's motions or, in the alternative, requesting a stay of judgment until May 28 to allow Defendants to obtain and finalize a bond to stay judgment under Rule 62(b) (D.I. 178);

WHEREAS, on May 19, 2021, the Court denied Defendants' motion to stay judgment, and recognized that Defendants' alternative request to stay judgment until May 28 was moot in view of Xcoal's assurance that it would not enforce the judgment until after May 28 (D.I. 182);

WHEREAS, on May 28, 2021, Defendants filed a motion for supersedeas bond to stay judgment pursuant to Rule 62(b) (D.I. 189);

WHEREAS, on June 4, 2021, the parties submitted a proposed order, stipulating to approval of the supersedeas bond to stay judgment "through the date of the issuance of the

mandate by the United States Court of Appeals for the Third Circuit following any appeal timely filed by Defendants concerning the Judgment" (D.I. 190), which the Court so-ordered on June 8, 2021;

WHEREAS, the Court has considered the parties' briefing on Xcoal's post-judgment motions for attorneys' fees and costs, and for prejudgment and post-judgment interest (D.I. 169, 171, 175, 176, 183, 184);

NOW, THERFORE, IT IS HEREBY ORDERED that: (1) Xcoal's Rule 54(d)(2) motion for attorneys' fees and costs (D.I. 168) is GRANTED; (2) Xcoal's Rule 59(e) motion to amend the judgment to include prejudgment and post-judgment interest (D.I. 170) is GRANTED IN PART and DENIED IN PART; (3) the parties shall meet and confer and, no later than September 27, 2021, submit a form of judgment order consistent with this Memorandum Order, to allow the Court to enter amended judgment and close the case.

## I. Xcoal's Rule 54(d)(2) Motion For Attorneys' Fees And Costs

### A. Xcoal's Request For Attorneys' Fees And Costs Against SCC and Governor Justice Based On The Guarantee

Xcoal contends it is entitled to an award against SCC and Governor Justice for attorneys' fees and costs incurred from the date Xcoal filed its complaint in this action through the date on which the Court entered judgment, in the total amount of $1,692,482.62. (*See* D.I. 169 at 2) The basis for Xcoal's request is an indemnification provision in the Guarantee, which provides:

> Guarantors further agree to indemnify Xcoal against any losses Xcoal may sustain and expenses it may incur as a result of the enforcement or attempted enforcement by Xcoal of any of its rights and remedies under the Contracts, in the event of a default by Counterparties thereunder, and/or as a result of the enforcement or attempted enforcement by Xcoal of any of its rights against Guarantors hereunder.

(PTX2 at 1) According to Xcoal, since this action arises from Xcoal's efforts to enforce its rights and remedies under the CSA and the Guarantee, and since its "losses" and "expenses" include attorneys' fees and costs, it is entitled to recover attorneys' fees and costs from SCC and Governor Justice. (*See* D.I. 169 at 4-5)

In their brief, Defendants do not challenge Xcoal's position that it is entitled to attorneys' fees and costs under the indemnification provision, but instead oppose principally based on procedural grounds. Defendants argue that Xcoal cannot seek contractual indemnification for attorneys' fees under Rule 54(d)(2) but must, rather, bring "a separate cause of action for breach of the duty to indemnify." (D.I. 175 at 1) The Court disagrees with Defendants.

While Delaware law *permits* a party seeking indemnification to bring a separate action, it does not always and universally *require* it. None of the cases cited by Defendants supports the proposition that a party seeking indemnification of attorneys' fees and costs must bring an action that is separate from the underlying action giving rise to the duty to indemnify. *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197-98 (Del. 2009) ("[T]he term "indemnity" has a distinct legal meaning that *permits* the party seeking indemnification to bring a separate cause of action for indemnification after first bringing a successful action for breach of the contract.") (emphasis added); *Winshall v. Viacom Int'l, Inc.*, 2019 WL 960213, at *9 (Del. Super. Ct. Feb. 25, 2019) (allowing, but not requiring, separate indemnity claim to proceed to recover attorneys' fees).

Here, Xcoal's Rule 54(d)(2) motion is an appropriate vehicle by which Xcoal may seek attorneys' fees. Rule 54(d)(2)(A) mandates that claims for attorneys' fees be made by a motion "unless the substantive law requires those fees to be proved at trial as an element of damages." While the Advisory Committee notes to the 1993 Amendment cite attorneys' fees sought

4

pursuant to the terms of a contract as an example of attorneys' fees recoverable as an element of damages, the notes go on to say that such damages "typically are to be claimed in a pleading, and may involve issues to be resolved by a jury." Given the specific circumstances of the instant case, Xcoal's request for attorneys' fees is not a "typical" damages claim, and the Court finds nothing in the statutory provision or the Advisory Committee notes that would preclude Xcoal's recovery of attorneys' fees through the procedure used in this case. *See Kripplebauer v. Celotex Corp.*, 2004 U.S. Dist. LEXIS 23998, at *16 (M.D. Pa. Nov. 2, 2004) (finding that committee notes' use of "permissive modifiers," including "typically" and "may," "indicates that when fees are sought under the terms of a contract there are atypical cases . . . [that do] not involve issues for a jury to resolve"); *see also United States ex rel. Ragghianti Founds. III, LLC v. Peter R. Brown Constr., Inc.*, 674 F. App'x 901, 910 (11th Cir. 2017) (finding district court did not err in directing party to file Rule 54 motion for attorneys' fees recoverable under indemnity provision).

Since there was no jury trial in this case, Xcoal's claim for attorneys' fees does not "involve issues to be resolved by a jury." The Court sees no practical difference between deciding Xcoal's attorneys' fees as a part of the bench trial or now on a post-trial motion. *See Jewelcor Inc. v. Karfunkel*, 2005 WL 2674300, at *3 & n.3 (M.D. Pa. Oct. 20, 2005) (granting Rule 54(d)(2)(A) motion for attorney's fees recoverable under lease and noting that "this case was heard by the court without a jury and the claim for attorneys' fees would, in any event, be decided by the court"); *see also Kripplebauer*, 2004 U.S. Dist. Lexis 23998, at *16-17 (finding attorneys' fees recoverable under Rule 54(d)(2)(A) when issues of contract-based attorneys' fees and expenses were not put to jury to decide).

During the course of litigation, Defendants never objected to the procedure the Court planned to follow to resolve Xcoal's claim for attorneys' fees and costs after trial. There is no

5

surprise, and no unfair prejudice, as a consequence of the Court resolving the fees and costs issues now, just as the parties have long known would occur.

In the parties' original proposed pretrial order, Xcoal stated that it would be seeking "losses and expenses" encompassed by the indemnification provision of the Guarantee, including "attorneys' fees, expenses, and costs, in an amount to be determined after trial."[1] (D.I. 66 Ex. L) Xcoal reaffirmed that position in the parties' updated proposed pretrial order. (*See* D.I. 87 Ex. L) Defendants did not object on either occasion.

The bench trial was then held, and Defendants did not raise any issue regarding the lack of evidence on attorneys' fees during the trial. Xcoal stated in its opening post-trial brief that it would seek "attorneys' fees, expenses and costs in an amount to be determined *after trial* pursuant to the Guarantee." (D.I. 148 at 20) (emphasis added) Defendants again did not object. Accordingly, and again consistent with how this case had long been litigated, the Court concluded in its bench trial opinion that "Xcoal may also be entitled to pre-judgment and post-judgment interest at applicable rates as well as attorneys' fees and costs under the Guarantee." (D.I. 162 at 61) The Court neither said nor suggested that it was either too late or too early for Xcoal to present evidence of the attorneys' fees and costs it was seeking.

Thus, the parties' conduct in the litigation has consistently, throughout, manifested a mutual understanding that Xcoal's claim for attorneys' fees and costs could and would be resolved on a post-trial motion. It would be fundamentally unfair to allow Defendants to change course at this late stage and prevail on an untimely objection. Allowing Defendants to do so

---

[1] This proposed procedure is consistent with Xcoal's request for attorneys' fees and costs in the complaint, which are collateral to the damages arising from the breach of contract and breach of guaranty claims. (*See* D.I. 2 at 20) ("Awarding Xcoal such other and further damages and relief as is just and proper, including pre- and post-judgment interest, costs, expenses, disbursements and attorneys' fees.")

would also unduly extend the parties' already lengthy litigation in this District, waste a substantial portion of the Court's efforts that have been devoted to resolving the parties' disputes, drive up the parties' costs, delay Xcoal's opportunity to be made whole, and (ironically) likely result in an even greater award to Xcoal (as Defendants would likely have to reinburse Xcoal for again briefing the attorneys' fees and costs issues to the Court, perhaps in a separate action and likely after an appeal).

Therefore, the Court finds that it is appropriate for Xcoal to request attorneys' fees and costs under the Guarantee by filing the pending Rule 54(d)(2) motion. Additionally, since Defendants did not challenge Xcoal's entitlement to attorneys' fees and costs under the Guarantee in its brief opposing the pending motion, any objection on that front has been forfeited.[2] Hence, the Court finds that Xcoal is entitled to recover reasonable attorneys' fees and costs pursuant to the indemnification provision of the Guarantee.

## B.     The Court's Inherent Authority

In the alternative, Xcoal asks the Court to award attorneys' fees and costs against all Defendants pursuant to the Court's inherent equitable powers and consistent with the factors set forth in 28 U.S.C. § 1927. (*See* D.I. 169 at 11) On these grounds, Xcoal requests the total amount of its attorneys' fees and costs, or an apportionment of the fees and costs attributable to Defendants' alleged misconduct. (*See id.* at 14) The Court agrees with Xcoal that Defendants

---

[2] In any event, the Court agrees with Xcoal that it is entitled to reasonable attorneys' fees and costs pursuant to the Guarantee, which clearly and unambiguously requires SCC and Governor Justice to "indemnify Xcoal against any losses Xcoal may sustain and expenses it may incur as a result of the enforcement or attempted enforcement by Xcoal of any of its rights and remedies under the Contracts." (PTX2 at 1)

7

engaged in bad faith misconduct in this case and finds good cause to exercise its inherent equitable powers to grant reasonable attorneys' fees and costs to Xcoal.

The Court has inherent authority to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal citation and quotation marks omitted). Relatedly, when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has interpreted Section 1927 to permit fee awards where "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

Since Xcoal is explicit that it "is not seeking attorneys' fees or costs from Defendants' counsel" (D.I. 169 at 11), its request for attorneys' fees and costs cannot be based on Section 1927. Nonetheless, the factors courts consider when ruling on Section 1927 motions are instructive here. *See W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*, 231 F. Supp. 3d 19, 21 (D. Del. 2017) (awarding attorneys' fees incurred in relation to sanctions motion); *In re Elonex Phase II Power Mgmt. Litig.*, 279 F. Supp. 2d 521, 525 (D. Del. 2003) (awarding attorneys' fees incurred in opposing "facially meritless Rule 60(b) motion").

The Court agrees with Xcoal that Defendants have caused repeated and unjustified delays and disruptions in this litigation. (*See* D.I. 169 at 14) The trial was postponed twice, for a total of more than eleven months, both times at Defendants' request. (*See* D.I. 162 at 57 & n.13) In connection with such requests, Defendants emphasized Mr. Getty's essential role as lead trial

counsel, but when the trial actually occurred Mr. Getty only presented an opening statement and then took no part in examining any witnesses. (*See* D.I. 169 at 17; *see also* D.I. 74)

Additionally, the timing of Defendants' belated attempts to convert the remote trial to an in-person trial was troubling. Eleven days before the twice-delayed trial was scheduled to begin, Defendants filed an emergency request to convert the remote trial to a partial remote trial, despite the Court having already denied a similar request several weeks earlier and despite Defendants having failed to raise any concerns about the-planned remote trial at the pretrial conference. (*See* D.I. 169 at 15-16; *see also* D.I. 86, 98) In their renewed emergency request, Defendants completely ignored the Court's oral order (D.I. 100) and once again failed to address the significant logistical concerns the Court had raised relating to an in-person trial during that time in the Covid-19 pandemic. (*See* D.I. 169 at 15-16; *see also* D.I. 101, D.I. 104 at 3-4)

Then, when defense counsel came into possession of an anonymous letter before trial began, he surprisingly kept it to himself until after hearing Xcoal's opening statement and making his own. All of this (which is detailed in several transcripts of oral arguments and opinions of the Court (*see* D.I. 126, 132-35)) led to more delay in the trial (as well as increased costs to Xcoal and more expenditure of scarce judicial resources). While the Court cannot say this specific incident demonstrates bad faith (in part because, on the record before the Court, the circumstances surrounding the anonymous letter remain murky), it is plain Defendants (and defense counsel) did not handle it in nearly an ideal manner; to the contrary, they yet again added delay and drove up Xcoal's costs.

Defendants' unenforceability defense – raised the day before trial was scheduled to resume – is yet another example of unjustifiable delays and disruptions. (*See* D.I. 139) As the Court found in the bench trial opinion, Defendants' delay in raising this defense was both

"egregious" and "inexplicable." (D.I. 162 at 57) The trial was delayed multiple times at Defendants' request, but even with "this extra time, Defendants nevertheless failed even to hint at the new defense at any point during the two-plus years of pretrial litigation or in either of the *two* proposed final pretrial orders submitted by the parties." (*Id.*)

The Court also agrees with Xcoal that Defendants asserted meritless fraud and *force majeure* claims and failed to timely withdraw them, causing Xcoal to incur otherwise unnecessary attorneys' fees and costs. (*See* D.I. 169 at 17-19) Defendants did not even attempt to deny that their fraud and *force majeure* claims were exceedingly weak from the outset. Instead, they fault Xcoal for not challenging these claims on pretrial motions. (*See* D.I. 175 at 7) This is wrong and misguided; the last thing the Court wanted on the eve of trial was more motions practice. As importantly, a party busy preparing for a trial generally should not be expected to divert resources to moving to dismiss an opponent's claims it views as weak on the merits and suspects may be dropped. Defendants' conduct became even more egregious when they refused to withdraw their fraud and *force majeure* claims post-trial after having presented essentially no supporting evidence for them during the trial. Tellingly, when the Court asked during closing argument whether the fraud claim was still before the Court, Defendants, instead of expressly abandoning the claim, said only that the breach of contract claim was the "nub" of the case. (*See* D.I. 162 ¶¶ 154-55) This required Xcoal to spend time, money, and briefing pages on issues that Defendants had seemingly decided to abandon.

In sum, the Court finds that Defendants' bad faith misconduct warrants the exercise of the Court's inherent authority to grant Xcoal's reasonable attorneys' fees and costs. Since Defendants' repeated bad faith misconduct permeated the entirety of the litigation, it is neither necessary nor feasible to apportion the fees and costs attributable to Defendants' misconduct.

10

Accordingly, the Court believes that granting the full amount of attorneys' fees and costs incurred by Xcoal, to the extent that they are reasonable, is properly tailored relief.

### C. The Reasonableness Of Xcoal's Requested Attorneys' Fees And Costs

In support of its request for attorneys' fees and costs, totaling $1,692,482.62 (*see* D.I. 169 at 2), Xcoal provided a declaration of Mr. Kevin Lucas, lead counsel for Xcoal in this litigation. (D.I. 168-2) Mr. Lucas declares that the "services billed by [Buchanan Ingersoll & Rooney PC ("BIR")] and incurred by Xcoal covered by the monthly billing invoices on this matter for the May 31, 2018 to March 28, 2021 period are reasonable and appropriate." (D.I. 168-2 ¶ 11) Xcoal also attached exhibits as documentary support for the fees and costs incurred. (D.I. 168 Exs. A-L) The Court finds that the amount of requested fees and costs is not unreasonable, given the number and complexity of issues involved and the Court's observations of the skill and effectiveness of the attorneys representing Xcoal during this multi-year litigation. *See generally Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004) (stating that analysis of reasonableness of attorneys' fees should include Court's "perception of counsel's skill and experience during the trial of the underlying matter, as well as the quality of his moving papers").

Defendants, in an effort to avoid the Court reaching this conclusion, contend it is impossible to determine the reasonableness of the requested fees because the BIR invoices aggregate billing entries for each month into one block entry. (*See* D.I. 175 at 9-10) Defendants also identify "several entries" they claim are too vague. (D.I. 175 at 10) However, "the submission of time records is not a strict requirement for the recovery of attorneys' fees." *Dow Chemical Canada Inc. v. HRD Corp.*, 2013 WL 3942052, at *1 (D. Del. July 29, 2013). "A sophisticated consumer's arms-length purchasing of the services establishes that reasonableness,

11

at least in the absence of any contrary evidence." *Id.* at *2. Additionally, as Xcoal points out, because Defendants contemplated filing post-trial motions and appeals, it may have been unfairly prejudicial for Defendants to have had access to detailed descriptions of services provided by Xcoal's counsel. (*See* D.I. 184 at 9) Hence, the Court will not reduce the award of fees on the basis of block billing or vagueness of billing entries.[3]

Defendants also raise a specific challenge to the November 30, 2020 invoice, which indicates that Xcoal's counsel spent 77.5 hours on (1) legal research for and preparation of a reply brief, (2) review and finalization of hyperlinks for post-trial briefing, and (3) BIR internal discussions regarding case matters. (*See* D.I. 175 at 10) While admitting that "the reply brief may warrant substantial time," Defendants insist that finalizing hyperlinks and internal discussions do not. (*See* D.I. 175 at 10) The Court disagrees. Defendants fail to provide any evidence for their assertions, leaving them unsupported. *See Moon Express, Inc. v. Intuitive Machs., LLC*, 2018 WL 4972220, at *7 (D. Del. Oct. 15, 2018) (finding that "legal arguments do little to impact the Court's assessment of the actual evidence submitted"); *see also Audubon Eng'g Co. v. Int'l Procurement & Contracting Grp., LLC*, 2016 WL 1089677, at *2 (D. Del. Mar. 21, 2016) (rejecting defendant's objections to attorneys' fees because it submitted no affidavit or other factual evidence in support).

Defendants further object to Xcoal's expert costs, contending that the heavy redactions of the invoices prevent the assessment of the reasonableness of the costs. (*See* D.I. 175 at 11) While Xcoal offers to produce unredacted copies of expert invoices for the Court's review (*see* D.I. 184 at 9 n.13), the Court is able to find – based on its familiarity with the case, its

---

[3] Xcoal has offered to submit itemized bills to the Court for *in camera* review. (*See* D.I. 184 at 9)

observations of one of Xcoal's expert's (Mr. Hubert Payne) testimony during the trial, and the extent to which Xcoal's claims and defenses rely on its experts' opinions (*see, e.g.*, D.I. 162 ¶ 197) (Court finding Xcoal's damages expert Mr. Raymond L. Bummer's analysis persuasive) – that Xcoal's expert costs are reasonable, even without reviewing the itemized entries of the unredacted invoices, which appear to be voluminous. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2020 WL 2512045, at *6 (S.D.N.Y. May 15, 2020).

Finally, Defendants contend that the "majority" of the meal and travel expenses incurred by Xcoal is unreasonable. (*See* D.I. 175 at 11-12) The Court disagrees. Xcoal has persuasively explained the necessity of the expenses relating to the flight change and the hotel stays during the trial (*see* D.I. 184 at 10), and the Court finds that the other expenses challenged by Defendants are reasonable. While counsel failed to provide documentary evidence that all of the meal and travel expenses were billed to or paid for by Xcoal (*see* D.I. 175 at 12; *see also* D.I. 168 Ex. J), its voluntary reduction of requested fees and costs by $10,000 to "account for any inadvertent mis-billing or partial mis-billing" (*see* D.I. 169 at 2 n.2) is sufficient to accommodate this (likely curable) evidentiary defect.

In sum, Defendants have failed to provide any meritorious basis for reducing Xcoal's requested attorneys' fees and costs. The Court, accordingly, will award Xcoal $1,692,482.62, the full amount of attorneys' fees and costs it requests.

## II. Xcoal's Rule 59(e) Motion For Prejudgment And Post-judgment Interest

Xcoal also requests an award of prejudgment interest at a 7.25% rate running from May 31, 2018, when it filed this case, until April 14, 2021, when the Court entered judgment, compounded quarterly (*see* D.I. 171 at 5-9), as well as an award of post-judgment interest in the amount of 0.00000164% per day on the total monetary judgment running from April 14, 2021,

compounded annually (*see id.* at 11-12). The only portion of these requests opposed by Defendants is the compounding of prejudgment interest. (*See* D.I. 176) Defendants ask the Court to apply a simple interest formula rather than a compound interest formula to the prejudgment interest. (*See id.* at 1)

"Federal courts sitting in diversity must apply state law with respect to prejudgment interest." *Gleason v. Norwest Mortg., Inc.*, 253 F. App'x 198, 203 (3d Cir. 2007). While traditionally Delaware courts disfavored compound interest, *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 173 (Del. 2002), courts applying Delaware law have "broad discretion in fixing the interest rate [which] includes the authority to award compound interest," *CertiSign Holding, Inc. v. Kulikovsky*, 2018 WL 2938311, at *29 (Del. Ch. June 7, 2018); *see also Gotham Partners*, 817 A.2d at 173. Courts have awarded compound interest when necessary to fairly compensate the prevailing party. *See Edgewater Growth Capital Partners LP v. H.I.G. Capital, Inc.*, 68 A.3d 197, 238 (Del. Ch. 2013) (compounding prejudgment interest); *Brandin v. Gottlieb*, 2000 WL 1005954, at *29 (Del. Ch. July 13, 2000) (compounding prejudgment interest); *ReCor Medical, Inc. v. Warnking*, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015) (compounding post-judgment interest); *Seaport Village Ltd. v. Seaport Village Operating Co., LLC*, 2014 WL 4782817, at *2 (Del. Ch. Sept. 24, 2014) (compounding post-judgment interest).

The trial in this case was delayed twice, from September 16, 2019 to August 25, 2020, for a total of 344 days, both times at the request of Defendants. (*See* D.I. 162 at 57 & n.13) These postponements "deprived Xcoal of the benefit of [recouping] the damages on a timely basis to which it was entitled." (D.I. 183 at 4) Defendants, in the meantime, had the benefit of Xcoal's

14

money throughout the period of delay. Hence, it is appropriate to award Xcoal compound prejudgment interest for a period of 344 days.

The Court will award Xcoal only simple interest for the period of May 31, 2018 through May 5, 2020 (which is the 344th day before April 14, 2021). The damages award represents Xcoal's aggregated expected returns for the unperformed portion of the CSA, which would have incrementally accrued until November 2019. (*See* D.I. 162 at 10) Xcoal retained the principal unpaid to Defendants during the course of the litigation, from which Xcoal could generate investment returns. (*See* D.I. 176 at 3)

In all other aspects – specifically, quarterly compounded prejudgment interest at a rate of 7.25% from May 6, 2020 through April 14, 2021, and post-judgment interest at a per diem rate of 0.00000164% for each day from April 15, 2021 – Xcoal's Rule 59(e) motion is granted.

September 23, 2021  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE