**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| XCOAL ENERGY & RESOURCES, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>BLUESTONE ENERGY SALES )<br>CORP., SOUTHERN COAL CORP., )<br>and JAMES C. JUSTICE II, )<br>)<br>Defendants. ) | C.A. No. 18-819-LPS |

**PLAINTIFF XCOAL ENERGY & RESOURCES'S MOTION
FOR AUTHORIZATION TO REGISTER AMENDMENT
TO JUDGMENT (D.I. 195) PURSUANT TO 28 U.S.C. § 1963**

Plaintiff Xcoal Energy & Resources ("Xcoal"), by and through its undersigned counsel, submits the within motion for authorization to register judgment against Bluestone Energy Sales Corporation ("Bluestone"), Southern Coal Corporation ("SCC"), and James C. Justice, II ("Governor Justice", and together with Bluestone and SCC, "Defendants") in the Federal District Courts in the Eastern and Western Districts of Virginia and in the Northern and Southern Districts of West Virginia pursuant to 28 U.S.C. § 1963, and in support thereof, states as follows:

**I.     INTRODUCTION**

1.     On April 14, 2021, this Court issued a Judgment (D.I. 167) in the amount of $6,814,105.30 against the Defendants, jointly and severally, and in favor of Xcoal (the "April 14 Judgment").

2.     Defendants subsequently obtained a Supersedeas Bond (No. K40408460) in the maximum penal sum of $8,176,927.00 (the "Supersedeas Bond"). (*See* D.I. 189-2). The Court

then approved the Supersedeas Bond and entered a Stipulation and Proposed Order filed by the parties which stayed enforcement and execution of the April 14 Judgment. (*See* D.I. 190).

3. As discussed further below, the Court subsequently awarded Xcoal attorneys' fees and costs and pre- and post-judgment interest by Memorandum Order dated September 23, 2021 (D.I. 193), amended the April 14 Judgment accordingly to increase the total award to Xcoal to $10,005,283.08 (D.I. 195), and provided Defendants the opportunity to obtain a second bond in order to stay execution on the difference between the maximum penal sum of the existing Supersedeas Bond (*i.e.*, $8,176,927.000) and the total award to Xcoal (*i.e.*, $10,005,283.08) of $1,828,356.08 (the "Deficiency Amount") (D.I. 195, at ¶ 2).

4. Although Defendants have indicated that they would be obtaining further bonding to cover the Deficiency Amount of $1,828,356.08 during the pendency of their appeal, Defendants have not done so.

5. Xcoal respectfully requests that the Court authorize the registration of the Amendment to Judgment in the Federal District Courts in the Eastern and Western Districts of Virginia and in the Northern and Southern Districts of West Virginia pursuant to 28 U.S.C. § 1963 so that Xcoal may execute on the Deficiency Amount in those districts.

6. As set forth below, there is "good cause" to register the Amendment to Judgment because, upon information and belief, (i) Defendants have substantial property in the above-referenced districts and insufficient property in this District to satisfy the Deficiency Amount and (ii) Xcoal may be left with a partially un-bonded and unsatisfied judgment if Defendants do not obtain further bonding or, alternatively, Xcoal is unable to effectively execute against the Deficiency Amount during the pendency of Defendants' appeal.

## II.     BACKGROUND[1]

### A.     The Court Stays Execution on the April 14 Judgment (D.I. 167).

7.      On March 29, 2021, this Court issued an Opinion (D.I. 162) and Order (D.I. 163) finding in favor of Xcoal and against Defendants on Counts I, II, and III of the Complaint and on Counts I, II, and III of the Counterclaims. Specifically, the Court found that "Xcoal has demonstrated that Bluestone's substantial and repeated breaches substantially impaired... the value of the whole CSA." (*Id*. at ¶ 43). As a result, Xcoal was "entitled to judgment in its favor and recovery of its full damages." (*Id*.). The Court also held that SCC and Governor Justice were liable under the Guarantee for Xcoal's damages resulting from Bluestone's breach of the CSA. (*Id*. at ¶ 53).

8.      Consistent with its March 29, 2021 Opinion and Order, on April 14, 2021, this Court entered the April 14 Judgment (D.I. 167) in the amount of $6,814,105.30 against the Defendants, jointly and severally, and in favor of Xcoal.

9.      Subsequently, Defendants requested that the Court extend the automatic stay of the enforcement and execution of the April 14 Judgment, but without Defendants first obtaining a bond approved by the Court. (*See* D.I. 178). Xcoal opposed Defendants' request (D.I. 180), and the Court denied the requested stay by Order dated May 19, 2021 (D.I. 182).

10.     On May 28, 2021, Defendants filed a Motion for Approval of Bond and to Stay Execution of Judgment (D.I. 189). Defendants' Motion (D.I. 189) attached as Exhibit A thereto (D.I. 189-2) the Supersedeas Bond in the maximum penal sum of $8,176,927.00 with Defendants

---

[1] In consideration of this Court's extensive familiarly with the facts of this case, Xcoal will not repeat the lengthy background here.

3

as principals and Federal Insurance Company as surety, which covers satisfaction, *inter alia*, of "the [J]udgment in full, together with costs and interest on such [J]udgment."[2]

11. On June 8, 2021, the Court approved a Stipulation and Proposed Order filed by the parties on June 4, 2021, thereby staying enforcement and execution of the Judgment (the "June 8, 2021 Stay"). (*See* D.I. 190). More specifically, the June 8, 2021 Stay states, *inter alia*, as follows:

> IT IS HEREBY STIPULATED AND AGREED by the parties hereto, through their undersigned counsel, subject to approval by the Court, that, pursuant to Rule 62(b) of the Federal Rules of Civil Procedure, the Bond (D.I. 189-2) is hereby approved and execution on the April 14, 2021 Judgment (D.I. 167) is hereby stayed as of the date of this Order through the date of the issuance of the mandate by the United States Court of Appeals for the Third Circuit following any appeal timely filed by Defendants concerning the Judgment.

**B.      The Amendment to Judgment (D.I. 195).**

12. On April 28, 2021, Xcoal filed a Motion to Amend Judgment to Include Pre-Judgment and Post-Judgment Interest Pursuant to Rule 59(e) (D.I. 170) and also a Motion for Attorney's Fees and Costs (D.I. 172).

13. Thereafter, on September 23, 2021, the Court granted in part and denied in part Xcoal's Motion to Amend Judgment to Include Pre-Judgment and Post-Judgment Interest Pursuant to Rule 59(e) and granted Xcoal's Motion for Attorney's Fees and Costs. (*See* D.I. 193).

14. On September 27, 2021, the parties jointly submitted a proposed Amendment to Judgment (D.I. 167). The next day, the Court entered the Amendment to Judgment (D.I. 167) at D.I. 195. Pursuant thereto, this Court ordered, *inter alia*, as follows:

---

[2] As further addressed in Paragraph 14 below, the total amount awarded to Xcoal is now $10,005,283.08, which represents the total of the April 14 Judgment of $6,814,105.30, attorneys' fees and costs of $1,692,482.62, and pre-judgment interest of $1,498,695.16. The total of the April 14 Judgment and pre-judgment interest alone (*i.e.,* $8,312,800.46) exceeds the maximum penal sum of the existing Supersedeas Bond.

> The Judgment (D.I. 167), including, *inter alia*, the judgment entered in the amount of $6,814,105.30 against Defendants Bluestone, SCC, and Governor Justice, jointly and severally, and in favor of Xcoal, remains in full force and effect and hereby is amended to increase, in accordance with the Court's Memorandum Order dated September 23, 2021 (D.I. 193), the amounts awarded to Xcoal and against Defendants Bluestone, SCC, and Governor Justice, jointly and severally, as follows:
>
> (a)  For pre-judgment interest in the total amount of **$1,498,695.16**;
>
> (b)  For attorney's fees and costs in the total amount of **$1,692,482.62**; and
>
> (c)  For post-judgment interest in the per diem amount of 0.00000164% per day on the total amount of **$10,005,283.08** (i.e., the judgment amount of **$6,814,105.30** in paragraph 9 of the Judgment, pre-judgment interest in the amount of **$1,498,695.16**, attorney's fees and costs in the amount of **$1,692,482.62**), and, with such post-judgment interest running from April 14, 2021 until the Judgment (D.I. 167), as herein amended, is fully satisfied, compounded annually.

(D.I. 195, at ¶ 1) (emphasis in original).

15. Pursuant to the Amendment to Judgment, "[t]o the extent that the total amount awarded to Xcoal in the Judgment, as herein amended, exceeds the maximum penal sum of the Bond (*i.e.,* $8,176,927.00), Defendants may receive a stay of execution with respect to such excess amount ***only upon providing a second bond or other security, as to be approved by the Court***." (D.I. 195, at ¶ 2) (emphasis added).

16. As set forth above, the total amount awarded to Xcoal is $10,005,283.08, not including post-judgment interest. This is $1,828,356.08 in excess of the existing Supersedeas Bond (No. K4040846) previously approved by the Court and which formed the basis for the June 8, 2021 Stay.

### C. Defendants File Notice of Appeal.

17. On October 15, 2021, Defendants filed a Notice of Appeal from the Judgment and the Amendment to Judgment. (*See* D.I. 196).

18. Defendants' appeal is currently pending before the Court of Appeals for the Third Circuit at No. 21-2926.

### D. Expiration of the Automatic Stay and Defendants' Failure to Obtain a Second Bond.

19. As set forth in the Amendment to Judgment, in order to obtain a stay of execution with the respect to the $1,828,356.08 Deficiency Amount, Defendants must first provide a "second bond or other security, as approved by the Court." (D.I. 195, at ¶ 2).

20. Defendants have not obtained such bond or other security with respect to the Deficiency Amount, and the automatic stay provided for under Fed. R. Civ. P. 62(a) has expired.

21. In a good faith effort to cooperate with Defendants on this matter, counsel for Xcoal inquired as to whether Defendants intended to obtain a second bond for the Deficiency Amount. Defendants, however, did not initially receive a response regarding the same.

22. Subsequently, Defendants counsel indicated during a telephone discussion that Defendants intended to obtain a bond to cover the Deficiency Amount.

23. Thereafter, Xcoal's counsel requested confirmation that Defendants intended to obtain a second bond and inquired as to when such bond would be obtained. Xcoal's counsel also advised that, should Defendants obtain a suitable bond, Xcoal would cooperate with Defendants in obtaining a stay as to the Deficiency Amount.

24. Despite Xcoal's inquiries, Defendants have not responded by providing a second bond, or a timeframe in which they intended to obtain one.

25. Notably, this is not the first time that Defendants have indicated that they would be obtaining a bond in support of a stay, only for them to not timely do so. Indeed, after entry of the April 14 Judgment, Defendants indicated that they would obtain a bond, but only did so after Xcoal moved for authorization to register the Judgment outside of this district. (*See, e.g.,* D.I. 185, ¶¶ 2-7).[3]

26. In light of Defendants' failure to obtain a second bond to cover the Deficiency Amount or even provide any timeframe by which they may do so, Xcoal now files this Motion so that it may execute on the Deficiency Amount in the districts identified herein.

### III. ARGUMENT

27. Pursuant to 28 U.S.C. § 1963, "[a] judgment in an action for the recovery of money . . . entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown."

28. As an appeal by the Defendants is currently pending before the Third Circuit Court of Appeals (No. 21-2926), registration of the Amendment to Judgment in another judicial district requires a showing of "good cause." *See, e.g., Moon Express, Inc. v. Intuitive Machs., LLC*, No. 16-344, 2018 WL 4972220, at *9 (D. Del. Oct. 15, 2018) (Stark, C.J.); *Associated Bus. Tel. Sys., Inc. v. Greater Cap. Corp.*, 128 F.R.D. 63, 66-67 (D. N.J. 1989).

29. This Court retains jurisdiction to authorize the registration of judgment "for good cause shown" during the pendency of Defendants' appeal to the Court of Appeals for the Third

---

[3] The Court ultimately denied Xcoal's request for authorization to register the April 14 Judgment, as there was no good cause at that time to do so in light of the Court's entry of the above-referenced Stipulation and Proposed Order staying execution on the Judgment (D.I. 190).

Circuit. *See, e.g., Shelton v. FCS Capital LLC*, No. 2:18-cv-03723, 2020 WL 4196211, at *1 (E.D. Pa. July 21, 2020); *Johns v. Rozet*, 143 F.R.D. 11, 12 (D.D.C. 1992).

30. First, a "mere showing that the defendant has substantial property in [another] district and insufficient [property] in the rendering district to satisfy the judgment" satisfies the "good cause" standard. *Associated Bus. Tel. Sys.*, 128 F.R.D. at 66 (quoting Siegel, Commentary on 1988 Revision, 28 U.S.C. § 1963 (West Supp. 1989)). *See also Moon Express,* 2018 WL 4972220, at *9 ("The good cause requirement may be satisfied if the judgment debtor has substantial property in a foreign district and insufficient property in the rendering district to satisfy the judgment.") (citations omitted).

31. Upon information and belief, Defendants do not have sufficient assets in this district to satisfy the Deficiency Amount.

32. On the other hand, Defendants have significant connections with Virginia and West Virginia, and upon information and belief, Defendants likely have substantial assets in each of these states. More specifically, public records and the record of this case demonstrate as follows:

- Bluestone's principal place of business is located in Roanoke, Virginia. (*See* Counterclaims, ¶ 1) (D.I. 11).

- SCC's principal place of business is located in Roanoke, Virginia (*Id*. at ¶ 2).

- "Bluestone and SCC are owned and controlled directly or indirectly by Governor Justice and/or members of his family and/or entities owned and controlled by them." (D.I. 162, ¶ 5).

- "Bluestone sells their met coal into interstate and international commerce, with international shipping taking place primarily from the ports of Norfolk and Newport News, Virginia."[4]

---

[4] *See* Complaint filed by Governor Justice, *et al*., against, *inter alia*, Greensill Capital (UK) Limited at 1:21-cv-02252, D.I. 8, ¶ 40 (S.D.N.Y.). "Bluestone" is expansively defined in the Complaint as "Bluestone Resources, Inc., Bluestone Coal Sales Corporation, and Blackstone Energy, Ltd... and collectively with their affiliates engaged in mining or related business, 'Bluestone.'" (*Id*. at

- The coal supplied or to be supplied under the CSA was placed into railcars at a loadout facility located in West Virginia. (PTX3).

- The surface mines serving the loadout at which the coal was supplied or to be supplied to Xcoal under the CSA were located in West Virginia and Virginia. (*See* Taylor Tr. 575, Exhibit 2 hereto; Deposition Testimony of James C Justice, III, pp. 19-20, Exhibit 3 hereto).

- "James C. Justice, II is a citizen and resident of West Virginia, and his family serves as the principal owners of the Bluestone and Southern Coal counterclaim-plaintiffs." (Counterclaims, ¶ 3) (D.I. 11).

- Governor Justice is the current Governor of West Virginia. (D.I. 162, ¶ 3).

33. Second, Courts have also found "good cause" where there is a "distinct possibility of [a] plaintiff being faced with an unsatisfied judgment." *Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2006 WL 2349991, at **1-2 (E.D. Pa. Aug. 11, 2006). The judgment creditor, however, is not required to "show exact evidence of assets." *Owen v. Soundview Fin. Group, Inc.*, 71 F. Supp. 2d 278, 279 (S.D.N.Y. 1999).

34. As noted above, Xcoal opposed Defendants' prior request to extend the automatic stay of execution on the April 14 Judgment without Defendants first posting a bond. In support of its opposition, Xcoal stated that, based on public reports and court filings, Governor Justice and his family businesses are subject to considerable outstanding debts and appear to be facing a rapidly deteriorating financial position.[5] As the Court noted in its May 19, 2021 Order in denying

---

p. 2). As Xcoal stated in its previously-filed Opposition to Defendants' Motion to Stay Execution of the April 14, 2021 Judgment, this definition may certainly encompass both corporate Defendants in this case. (D.I. 180, p. 5 n.5). Defendants did not suggest otherwise in their subsequent Reply. (*See* D.I. 181).

[5] Xcoal incorporates herein and refers the Court to this prior filing which addresses Defendants' perilous financial condition. (*See* D.I. 180, pp. 4-5).

the requested extension of the automatic stay, Defendants failed to address the risk of their inability to pay the Judgment in their Reply to Xcoal's Opposition.  (*See* D.I. 182).

35. Defendants' financial situation does not appear to have improved in any way since May 2021.  Indeed, after the Court denied Defendants' prior request for a stay, the Associated Press reported that Governor Justice "confirmed... that is he is ***personally liable*** for $700 million in loans taken by his coal companies...." (emphasis added).[6]  Despite reports that attempts have been made to settle that matter, it was reported on September 27, 2021 that the lender "is doing everything possible to collect the monies owed to it – about $700 million."[7]

36. In short, as was the case in the Spring of 2021 when the Court denied Defendants' requested stay of execution on the April 14 Judgment, Defendants' financial situation remains ominous and the risk that Defendants will be unable to pay the Deficiency Amount is substantial.

## IV. CONCLUSION

37. For the foregoing reasons, Xcoal respectfully requests that the Court enter an Order in the form attached authorizing the registration of the Amendment to Judgment against each of the Defendants in the United States Federal Courts for the Eastern and Western Districts of

---

[6] *See* Cuneyt Dil, *West Virginia Governor Liable for $700M Coal Company Loan*, Associated Press (June 1, 2021), https://apnews.com/article/west-virginia-virginia-business-dea5f3726f1a2f8ad12cefb72972e981.

[7] *See* Ken Silverstein, *West Virginia Governor Jim Justice Tries to Squirm From Under Coal Business Debt*, Forbes (Sept. 27, 2021), https://www.forbes.com/sites/kensilverstein/2021/09/27/west-virginia-governor-jim-justice-tries-to-squirm-from-under-coal-business-debt/?sh=17cbbf8f1c94.

Virginia and the Northern and Southern Districts of West Virginia, so that Xcoal may execute as to the Deficiency Amount in these districts.

**WHEREFORE**, Xcoal respectfully requests that this Honorable Court enter an Order granting Xcoal authorization to register the Amendment to Judgment pursuant to 28 U.S.C. § 1963 in the manner set forth above together with such other and further relief as this Court deems just and proper.

Dated: February 1, 2022

BUCHANAN INGERSOLL & ROONEY PC

*/s/ Geoffrey G. Grivner*
Geoffrey G. Grivner (#4711)
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801
(302) 522-4200
(302) 522-4295 (facsimile)
*geoffrey.grivner@bipc.com*

Kevin P. Lucas (admitted *pro hac vice*)
Daniel C. Garfinkel (admitted *pro hac vice*)
Buchanan Ingersoll & Rooney, P.C.
Union Trust Building
501 Grant Street, Ste. 200
Pittsburgh, Pennsylvania 15219
(412) 562-8350
(412) 562-1041 (facsimile)
*kevin.lucas@bipc.com*
*daniel.garfinkel@bipc.com*

*Counsel for Xcoal Energy & Resources*